First Division June 14, 2004

No. 1-02-1191

HAYES MECHANICAL, INC., a Corporation,

Plaintiff-Appellant,

vs.

FIRST INDUSTRIAL, L.P., a Limited Partnership,

Defendant-Appellee

(The Stiffel Company, a Foreign Corporation; and Unknown Owners, and Non-record Claimants,

Defendants).

)))
)

)))

)

)

)

)

)

)

)

Appeal from 

the Circuit Court 

of Cook County

00 CH 03036

Honorable 

Clifford Meacham,

Judge Presiding

JUSTICE McBRIDE delivered the opinion of the court:

The issue on appeal is whether a construction contractor that renovated a commercial building pursuant to a contract with the building's tenant stated claims of 
quantum meruit
 and unjust enrichment against the building's owner, after the tenant failed to pay all of the contractor's charges.  The contractor contends the circuit court of Cook County abused its discretion by denying leave to file a proposed amended complaint containing sufficient factual allegations. The contractor is also arguing the circuit court erroneously determined that the contractor's only avenue of relief was statutory – the Mechanics Lien Act (770 ILCS 60/1 
et seq
. (West 2000)).

The record discloses the following relevant facts.  On March 17, 1998, defendant The Stiffel Company (Stiffel) leased the subject real property, a 200,000-square-foot one-story warehouse at 4307-09 South Morgan Street, Chicago, from the property owner, defendant First Industrial, Inc. (First Industrial), for a term of 15 years and 6 months.  Stiffel intended to relocate its corporate offices and the manufacture and warehousing of lamps and light fixtures from a multibuilding, multifloor facility on Chicago's northside to the South Morgan Street property.  The parties' written lease indicated that Stiffel was accepting the premises on an "as is" basis, and, with the exception of certain "Work Items," First Industrial was not obligated to make any repairs, replacements, or improvements of any kind or nature in connection with the lease.  Stiffel, however, was authorized to improve the warehouse at its own expense pursuant to plans approved by First Industrial.  According to an attachment to the lease entitled "Tenant Improvements Work Letter," it was Stiffel's "responsibility to be certain that the work [could] be performed in the Premises without any modifications to [First Industrial's] building."  Despite the fact that First Industrial had the right to review and approve or disapprove Stiffel's plans, the parties emphasized that First Industrial "shall have no liability to *** [any party] by reason of the existence and exercise of such approval rights."  The letter also indicated that Stiffel could borrow as much as $2 million from First Industrial toward some of the renovation costs, if it gave First Industrial notice within 45 days of the lease start date.  Stiffel was prohibited from applying any of the borrowed funds to its architectural or construction plans or building permits and could borrow no more than 75% of the actual work costs.  It could obtain the loan funds as needed by depositing 25% of the work costs into an escrow account established at its own expense, and was required to pay a 3% fee and 11.5% annual interest on the loan during the renovation period.  In addition, Stiffel had to repay the entire loan at 11.5% annual interest on or before the tenth anniversary of the lease or "immediately" if it failed to complete its renovation within nine months.  If Stiffel did not accept First Industrial's financing, it could still proceed with the renovation.  Regardless of how the renovation was financed, Stiffel agreed to protect the property from any mechanics or materialmen's liens, to maintain insurance, cause the general contractor and any sub-contractors to maintain insurance, and to protect, defend, indemnify, and hold First Industrial harmless from all losses and claims resulting from the renovation.  Stiffel was also made responsible for all structural and nonstructural repairs and maintenance at the leased premises.  Finally, Stiffel was obligated to remove its fixtures, equipment, and furnishings at the end of the lease, and to repair any damage resulting from the installation or removal of its property.  The written lease was entitled "Standard Form -- Industrial Building Lease."

On or about May 4, 1998, Stiffel and plaintiff construction contractor Hayes Mechanical, Inc. (Hayes Mechanical), executed an "Agreement for Design and Construction," which obligated the contractor to substantially complete the office renovation and some of the factory renovation at the South Morgan Street property by August 1, 1998, and obligated the tenant to make biweekly progress payments.  Hayes Mechanical also agreed to provide insurance naming Stiffel and First Industrial as additional insureds, and to indemnify and defend Stiffel and First Industrial against claims arising out of its work.  Paragraphs 33 and 34 of the written agreement provided:

     "33. 
Inspection. 
 [Stiffel's] representative and [First Industrial's] inspecting architect and representatives shall, at all times, have access to the Work whenever it is in preparation or progress, and [Hayes Mechanical] shall facilitate inspection of the Work by the aforesaid persons and by any public authorities concerned with the Work.

     34. 
[Stiffel's] Lease.
  [Hayes Mechanical] hereby acknowledges that [Stiffel] has a leasehold interest in the Project pursuant to that certain Standard Form Industrial Building Lease dated March 17, 1998 made by [Stiffel] as Tenant, and [First Industrial], as Landlord (the 'Lease'). [Hayes Mechanical] shall cooperate with [Stiffel] and use its reasonable efforts to help [Stiffel] comply with the terms, conditions and provisions of and the obligations imposed on [Stiffel], as Tenant, under the Tenant's [
sic
] Improvements Work Letter (Exhibit E to the Lease) ***."

Stiffel moved into the renovated facility on an unspecified date in 1998.  According to Hayes Mechanical's calculations, the total cost of the completed renovation project, including finance charges through February 1, 2000, was $4,355,415.53, and Stiffel paid only $4,101,906 before it ceased making payments at some point in 2000.  

In February 2000, Hayes Mechanical recorded an original contractor's claim for lien against First Industrial at the Cook County recorder of deeds' office, indicating that Hayes Mechanical was owed $253,509.53 for labor and materials provided at the South Morgan Street property.  Hayes Mechanical also filed a two-count action in the circuit court of Cook County.

Count I of the original complaint sought recovery of the lien amount from Stiffel, based on breach of contract.  However, Stiffel never answered the allegations and within a few months  assigned all of its known assets for the benefit of its creditors.  A statement of the company's liabilities and assets dated May 23, 2000, indicated Stiffel had become insolvent.  It had $12.8 million in liabilities but only $6.6 million in assets.  On June 20, 2000, Stiffel's assignee sent a letter to all of the company's known creditors announcing his intention to sell Stiffel as a turnkey operation in order to maximize the value of the assets and requesting that sworn claim forms be submitted within 30 days.  The assignee conducted a public auction on August 23 and 24, 2000, which netted $887,059.  On October 18, 2000, after prove-up, the trial court entered a $216,606.62 default judgment against Stiffel on the breach of contract claim.  On November 30, 2000, Hayes Mechanical instituted supplementary proceedings to collect the money judgment.  It states that "[a]t that point in time" it learned the award was "likely uncollectible" due to Stiffel's financial problems.  There is no indication in the record or appellate briefs that Hayes Mechanical submitted a sworn claim form to Stiffel's assignee, nor is there any indication of the amount of funds Hayes Mechanical would have received if it had.  Stiffel is not a party to this appeal.

Count II of the original complaint also sought recovery of the lien amount, but was directed at First Industrial, based on the recorded contractor's claim for lien.  First Industrial responded with affirmative defenses, which were later amended, alleging that the claimed amount was fraudulent because it was grossly overstated and included "nonlienable" amounts, such as equipment rental fees, which did not add value to the property.  Hayes Mechanical did not answer the amended affirmative defenses.  First Industrial also filed a motion for summary judgment on count II of the original complaint, reiterating the amended affirmative defenses.  Hayes Mechanical did not meet the trial court's deadline for filing a response to the summary judgment motion.  Instead, by its own account, Hayes Mechanical "opt[ed] to pursue a different legal course" and filed a satisfaction or release of its mechanic's lien claim against First Industrial with the Cook County recorder of deeds.  In a rider to the release, Hayes Mechanical stated the release would not "bar, release, compromise or settle any of Hayes Mechanical, Inc.'s common-law claims against the Stiffel Company, First Industrial, L.P., or any other entity or individual."  The next day, Hayes Mechanical asked for leave to file an amended pleading against First Industrial,  which included only the common law claims of 
quantum meruit
 and unjust enrichment.  Hayes Mechanical contended that its release of the lien claim rendered moot First Industrial's pending motion for summary judgment on count II, and it asked the trial court to transfer the case out of the circuit court's mechanics lien section since "the lien issues [were] resolved."

In its proposed 
quantum meruit
 count, Hayes Mechanical alleged it furnished labor and materials for the renovation of the South Morgan Street property owned by First Industrial "with the expectation that it would receive compensation for such services," and that Hayes Mechanical had not done so "gratuitously."  Hayes Mechanical did not specify where it had expected compensation to come from, nor did it indicate that First Industrial had any involvement in the renovation project.  Hayes Mechanical further alleged, however, that "First Industrial received the benefit of [the] services in that the Property was improved extensively through [the] provision of labor and materials to the Property," and "First Industrial has accepted and enjoyed the benefits of [the] provision of labor and materials to the property and it would be unjust for First Industrial to retain the benefit of these services without paying Hayes.  Hayes Mechanical concluded "the value of the benefit conferred upon First Industrial by the improvements to the Property completed by [Hayes Mechanical] is the reasonable value of the work performed," and prayed for judgment in its favor.  

In its proposed unjust enrichment count, Hayes Mechanical repeated the allegations from its quantum 
meruit
 count and added, "First Industrial has benefitted from the services rendered *** [and] First Industrial would be unjustly enriched if it was permitted to retain the benefit conferred on the Property *** without compensating [Hayes Mechanical] for the reasonable value of its services."

First Industrial responded that the motion for leave to amend should be denied because First Industrial had no direct relationship with Hayes Mechanical and was not a party to the renovation contract, and although it had been aware that Stiffel renovated, First Industrial had no communication with Hayes Mechanical and had "never even heard of" Hayes Mechanical before it received the contractor's lien claim.

   On March 27, 2001, the trial court denied leave to file the proposed amended complaint.

First Industrial then filed a second motion for summary judgment on count II of the original complaint, based on Hayes Mechanical's release of the lien.  After the trial court granted the motion and denied reconsideration, this appeal was taken from the order denying leave to file the proposed amended complaint.

The following principles are relevant to our review of the denial of leave to file the proposed amended complaint.  To begin with, plaintiffs do not have an absolute and unlimited right to amend.  
Ruklick v. Julius Schmid, Inc.
, 169 Ill. App. 3d 1098, 1113, 523 N.E.2d 1208, 1217 (1988).  The Code of Civil Procedure (Code) begins with the statement, "[t]his Act shall be liberally construed, to the end that controversies may be speedily and finally determined according to the substantive rights of the parties."  735 ILCS 5/1-106 (West 2000).  Section 2-616(a) of the Code provides that the circuit court may allow amendments to pleadings on just and reasonable terms, at any time before final judgment.  735 ILCS 5/2-616(a) (West 2000).  Further, the decision to grant leave to amend a complaint rests within the sound discretion of the circuit court.  
Ruklick
, 169 Ill. App. 3d at 1111, 523 N.E.2d at 1216.  The relevant factors considered in determining whether the circuit court abused its discretion are:  "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified."  
Loyola Academy v. S & S Roof Maintenance, Inc.
, 146 Ill.2d 263, 273, 586 N.E.2d 1211, 1215-16 (1992).  The plaintiff must meet all four 
Loyola Academy
 factors (
Loyola Academy
, 146 Ill. 2d at 276, 586 N.E.2d at 1216), and if the proposed amendment does not state a cognizable claim, and thus, fails the first factor, courts of review will often not proceed with further analysis. See, 
e.g.
, 
Wilk v. 1951 W. Dickens, Ltd.
, 297 Ill. App. 3d 258, 265, 696 N.E.2d 756, 760 (1998); 
Myers v. Illinois Central R.R. Co.
, 323 Ill. App. 3d 780, 788, 753 N.E.2d 560, 567 (2001).  

The primary consideration is whether amendment would further the ends of justice.  
Ruklick
, 169 Ill. App. 3d at 1113, 523 N.E.2d at 1217.  Where it is apparent even after amendment that no cause of action can be stated, leave to amend should be denied.  
Ruklick
, 169 Ill. App. 3d at 1111, 523 N.E.2d at 1216.  It is not necessary for the parties to go through the process of filing an amended pleading and then testing its sufficiency by a motion to dismiss – when ruling on a motion to amend, the court may consider the ultimate efficacy of a claim as stated in a proposed amended pleading.  
Village of Gulfport, Henderson County v. Buettner
, 114 Ill. App. 2d 1, 6, 251 N.E.2d 905, 907 (1969).  See also 
Fleisch v. First American Bank
, 305 Ill. App. 3d 105, 110, 710 N.E.2d 1281, 1285 (1999) (allowing leave to amend when plaintiff fails to demonstrate he can plead and prove a viable cause of action does not further the ends of justice).

In addition, before a trial judge can be found to have abused his or her discretion in denying leave to amend, it must be clear from the record that reasons or facts were presented as a basis for requesting the favorable exercise of the court's discretion.  
Bernstein v. Lind-Waldock & Co.
, 153 Ill. App. 3d 108, 112-13, 505 N.E.2d 1114, 1117 (1987); 
Tishman Midwest Management Corp. v. Wayne Jarvis, Ltd.
, 146 Ill. App. 3d 684, 692, 500 N.E.2d 431, 436 (1986).  Illinois is a fact-pleading jurisdiction, and plaintiffs cannot rely on mere conclusions of law or fact unsupported by specific factual allegations but must allege facts sufficient to bring their claims within the scope of the cause of action asserted.  
Hirsch v. Feuer
, 299 Ill. App.3d 1076, 1081, 702 N.E.2d 265, 269 (1998).

Hayes Mechanical acknowledges these legal principles, but contends that in this instance we should employ the nondeferential 
de novo
 standard of review applicable to the dismissal of a complaint for failure to state a claim pursuant to section 2-615 of the Code of Civil Procedure, because First Industrial's opposition to the motion for leave to amend was an attack on the factual sufficiency of the proposed amended complaint.  See 735 ILCS 5/2-615 (West 2000)); 
Goldberg v. Michael,
 328 Ill. App. 3d 593, 597, 766 N.E.2d 246, 250 (2002) (appellate court applies 
de novo
 standard of review to dismissal of complaint pursuant to section 2-615).  Hayes Mechanical argues that First Industrial's attack on the factual sufficiency of the proposed quasi-contract claims was "markedly different" from other defendants' arguments in opposition to leave to amend, warranting our application of a different 
standard of review.  We do not find this argument persuasive.  This appeal is similar to many others (
see, 
e.g.
, 
Wilk
, 297 Ill. App. 3d at 265, 696 N.E.2d at 760, 
Myers, 
323 Ill. App. 3d at 788, 753 N.E.2d at 567), and Hayes Mechanical has failed to cite any opinion in which the court departed from the well-established standard of review.  

Hayes Mechanical also contends that it factually stated the elements of claims for 
quantum meruit
 and unjust enrichment against First Industrial.  Hayes Mechanical argues that the record reflects the close relationship of "the three parties directly involved" in the property renovation, specifically the renovation contract and property lease which were "contemporaneously" executed and the lease which gave the landlord the right to approve plans and "the right to inspect the work in progress."  We note that the two "contemporaneous" contracts were actually executed two months apart.  In any event, Hayes Mechanical concludes that although the landlord was not a party to the renovation contract, it "clearly retained a degree of control" over the renovation project, and thus should pay for the balance owing on the renovation.  Further, any doubt about the sufficiency of the proposed pleading should have been resolved in favor of allowing the amendment.  First Industrial responds that the lack of a relationship between the landlord and contractor prevents the contractor from ever stating viable quasi-contract claims against the landlord.

A quasi-contract, or contract implied in law, is one in which no actual agreement between the parties occurred, but a duty is imposed to prevent injustice.  66 Am. Jur. 2d. 
Restitution and
 
Implied Contracts
 §6 (2001).  The prevention of unjustness is the fundamental aspect of the doctrine of quasi-contracts.  
Rutledge v. Housing Authority of the City of East St. Louis
, 88 Ill. App. 3d 1064, 1068-69, 411 N.E.2d 82, 86 (1980).

Quasi-contract claims include unjust enrichment and 
quantum meruit 
actions.  See 66 Am. Jur. 2d. 
Restitution and Implied Contracts
 §§ 2, 8 (2001).  The two types of actions are similar, 
in that the plaintiff must show that valuable services or materials were furnished by the plaintiff, received by the defendant, under circumstances which would make it unjust for the defendant to retain the benefit without paying.  See generally 
HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.
, 131 Ill. 2d 145, 160, 545 N.E.2d 672, 679 (1989); 
Partipilo v. Hallman
, 156 Ill. App. 3d 806, 810, 510 N.E.2d 8, 11 (1987); 
First National Bank of Springfield v. Malpractice Research, Inc.
, 179 Ill. 2d 353, 365, 688 N.E.2d 1179, 1185 (1997).  
In a 
quantum meruit
 action, the measure of recovery is the reasonable value of work and material provided, whereas in an unjust enrichment action, the inquiry focuses on the benefit received and retained as a result of the improvement provided by the contractor.  66 Am. Jur. 2d 
Restitution and Implied Contracts
 §9 (2001).  Notably, even when a person has received a benefit from another, he is liable for payment " 'only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it.  The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor.' "  
Rutledge
, 88 Ill. App. 3d at 1069, 411 N.E.2d at 86, quoting Restatement of Restitution §1, Comment
 c 
(1937).  

Thus, the focus of our analysis will be whether Hayes Mechanical alleged, not only that First Industrial received a benefit from the renovation work, but also that it received the benefit under circumstances which would make it unjust for First Industrial not to pay restitution.

Hayes Mechanical relies primarily on 
Midcoast Aviation, Inc. v. General Electric Credit Corp.
, 907 F.2d 732 (7th Cir. 1990), which involved significantly different circumstances from the present dispute.  In that case, a plane refurbisher, knowing that the party it contracted with was unable to pay for the refurbishment (
Midcoast Aviation
, 907 F.2d at 735), went directly to the third party that was financing the project and asked for assurances that it would be paid for its work.  
Midcoast Aviation
, 907 F.2d at 735.  The assurances were given, and work began.  
Midcoast Aviation
, 907 F.2d at 736.  Subsequently, the financier urged the refurbisher to finish the work on schedule, which the refurbisher did.  
Midcoast Aviation
, 907 F.2d at 736.  The refurbishment immediately benefitted the financier, because it increased the value of the project it had invested in.  
Midcoast Aviation
, 907 F.2d at 738 n.2.  However, when the bill was presented, the financier, which controlled which bills were paid, refused to see it paid.  
Midcoast Aviation
, 907 F.2d at 736, 739.  The refurbisher sued and obtained a judgment in contract against the party that hired the refurbisher and a judgment in quasi-contract against the third-party financier.  
Midcoast Aviation
, 907 F.2d at 736.  The financier appealed, arguing in part that courts generally will not impose a quasi-contractual obligation upon a third party for work done under an explicit contract between two different parties merely because the third party benefitted from the work.  
Midcoast Aviation
, 907 F.2d at 739.  The court remarked, however, that these circumstances differed from the usual scenario, in that the financier not only benefitted from the increased value of the project it had invested in, but also enticed the first party to undertake the work in the first place and then refused to see it paid.  
Midcoast Aviation
, 907 F.2d at 739.  The court concluded that the first party had reasonable expectations that it would be paid with the financier's money, and, therefore, it had stated an exception to the general rule barring recovery from a third party.  
Midcoast Aviation
, 907 F.2d at 739.  

In contrast, here, there is no indication that the landlord enticed the contractor to complete the renovation work requested by the tenant.  Furthermore, although the lease and attached work letter indicate the landlord helped finance the renovation and that the tenant agreed to pay its bills on time in order to protect the real property from mechanics or materialmen's liens, there is no indication the landlord had any control over which bills the tenant paid.  In fact, First Industrial has contended that it had no contact with Hayes Mechanical before or during the renovation project, and that it had "never even heard of" Hayes Mechanical before it received the lien claim.  
Midcoast Aviation
's analysis and conclusion only suggest that the present circumstances are the run-of-the-mill scenario in which a party providing services pursuant to a contract is disappointed by its co-party's failure to pay and, thus unreasonably turns to a third party for compensation.

First Industrial contends that cases such as
 Vanderlaan v. Berry Construction Co
., 119 Ill. App. 2d 142, 255 N.E.2d 615 (1970), in which subcontractors have been barred from recovering from property owners because there was no employment between the parties are dispositive.  No Illinois court has specifically addressed whether a contractor hired by a tenant that fails to pay for improvements to real property may assert quasi-contract claims against the owner of the property.  However, our research discloses that other jurisdictions have concluded that quasi-contract relief is not available to a contractor unless the owner has engaged in some type of improper, deceitful, or misleading conduct making it unjust for the owner not to pay for the improvement.

In 
DCB Construction Co. v. Central City Development Co.
, 965 P.2d 115 (Colo. 1998), the Supreme Court of Colorado began its analysis of the question with two basic propositions.  "First, there is the general rule that when an individual who is not the owner orders improvements on the owner's land and then fails to pay the contractor or supplier, 'the owner is not liable to the contractor or supplier unless he agreed to pay them.' " 
DCB Construction Co.
, 965 P.2d at 121 , quoting 3 D. Dobbs, Law of Remedies, §12.20(3), at 473 (2d ed. 1993).  This general rule seeks to protect rights of choice and personal autonomy, and ordinarily, an owner should not be forced into a legal relationship with someone other than the partner he has chosen.  
DCB Construction Co.
, 965 P.2d at 121.  The second basic relevant principle, found in the Restatement of Restitution, provides, that " ' [a] person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other 
merely
 because of the failure of performance by the third person.' " (Emphasis in original.)  
DCB Construction Co.
, 965 P.2d at 121, quoting Restatement of Restitution §110, at 455 (1937).

These two principles led the Colorado supreme court to conclude that a property owner that had never agreed to pay for a tenant's renovations should not be forced into a quasi-contractual relationship with the contractor who provided the renovation materials and services.  
DCB Construction Co.
, 965 P.2d at 121.   It was not enough that the tenant breached a contract to pay for improvements and that the landlord owned an improved building.  
DCB Construction Co.
, 965 P.2d at 121.  Rather:  

"There must be more.  It is unjust for a contractor to bear the loss of a debt unpaid.  However, it is not necessarily just or right to impose that debt upon the owner of the property merely to rectify the first injustice.  If that were so, anyone [benefitting] from another's services could be liable for those services.  We all enjoy the protection that we are generally not liable for services or goods for which we did not contract.  The courts should be slow to impose obligations in the absence of a contract; slow to impose the debts of one party upon another.

Hence an injustice that warrants the court's imposition of the remedy of restitution must rest not only in the loss to the contractor, but also in the conduct of the owner."  
DCB Construction Co.
, 965 P.2d at 121.

In addition, the court gave examples of unjust circumstances likely to warrant imposition of quasi-contractual relief against a landlord, such as where a landlord engaged in coercion or fraud to induce a contractor to enter into a contract with a tenant or to continue performance when the contractor might otherwise have ceased.  
DCB Construction Co.
, 965 P.2d at 121-22.  
The concept which "connects these examples is that 'injustice' involves some form of improper conduct by the party to be charged."  
DCB Construction Co.
, 965 P.2d at 122.  Furthermore, the rule that "injustice" in this context requires some form of improper, deceitful, or misleading conduct on the part of the landlord is in harmony with the Restatement of Restitution and the weight of authority in other jurisdictions.  
DCB Construction Co.
, 965 P.2d at 122-23.

The Colorado landlord gave permission for the work, had the right to approve all plans
 (
DCB Construction Co., 
965 P.2d at 117), 
was on the premises fairly regularly during the construction (
DCB Construction Co.
, 965 P.2d at 118), and contracted to retain the improvements upon lease termination
 
(
DCB Construction Co
., 965 P.2d at 122), yet never 
directed or communicated with the contractor regarding the renovation work (
DCB Construction Co.,
 965 P.2d at 118).  Accordingly, the court rejected the contractor's argument that the nature of the landlord's involvement in the renovation project was sufficient to render its retention of the benefit unjust, stating:

"A landlord will virtually always retain the right to give or withhold permission for work to be done on its premises.   As owner of the premises, the landlord is generally required to apply for and execute building permits or other necessary documents.   The landlord has a strong and legitimate interest in pre-approving and monitoring any significant construction.  Similarly, the landlord's participation in creating and/or approving specifications is a natural product of its interest in the property and is a matter of concern solely between the landlord and the tenant."  
DCB Construction Co.
, 965 P.2d at 122.

The court further remarked that it would not adopt a rule that essentially made landlords the insurers of risk assumed by contractors in extending credit to tenants.  
DCB Construction Co.
, 965 P.2d at 122.  A similar concern was expressed in 
Industrial Lift Truck Service Corp. v. Mitsubishi International Corp.
, 104 Ill. App.3d 357, 361, 432 N.E.2d 999, 1002 (1982), as follows:

"When parties enter into a contract they assume certain risks with an expectation of a return. Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of having those expectations defeated.  As a result, they have no remedy under the contract for restoring their expectations. In desperation, they turn to quasi-contract for recovery. This the law will not allow. Quasi-contract is not a means for shifting a risk one has assumed under contract."

In light of these principles and the principles governing leave to amend, we find that the circuit court did not abuse its discretion in denying Hayes Mechanical leave to file its proposed amended complaint.

Hayes Mechanical concluded but did not factually allege why "it would be unjust for First Industrial to retain the benefit" of Hayes Mechanical's services and why "First Industrial would be unjustly enriched if it was permitted to retain the benefit" of Hayes Mechanical's services.  The mere fact that Hayes Mechanical's labor and materials may have benefitted First Industrial is not sufficient in itself to require First Industrial to make restitution to Hayes Mechanical.  
Rutledge
, 88 Ill. App. 3d at 1069, 411 N.E.2d at 86.  Illinois is a fact-pleading jurisdiction (
Hirsch
, 299 Ill. App.3d at 1081, 702 N.E.2d at 269), and it was therefore incumbent upon Hayes Mechanical to state specific facts disclosing why it would be unjust for First Industrial not to make restitution.  Further, before a trial court can be found to have abused its discretion in denying leave to amend, it must be clear from the record that reasons of fact were presented to the court as a basis for requesting leave to amend.  
Bernstein
, 153 Ill. App. 3d at 112-13, 505 N.E.2d at 1117;
 Tishman
, 146 Ill. App. 3d at 692, 500 N.E.2d at 436.  

Not only did Hayes Mechanical fail to allege or otherwise present specific facts to the trial judge, the record discloses no facts upon which Hayes Mechanical could state quasi-contractual claims against First Industrial.  In keeping with the analysis of
 DCB Construction Co.
, 965 P.2d 115, we note that it is unjust for the contractor to bear the loss of the unpaid debt; however, the unpaid debt was incurred by the building's tenant, and an injustice that warrants the imposition of restitution includes not only a loss to the contractor but also improper conduct by the landlord.  Because there were no indications of improper conduct here on the part of the landlord, it would be unjust to impose the burden of the unpaid debt upon the innocent landlord.  There was no direct contract between the landlord and contractor from which it might be inferred the landlord had enticed, coerced, or mislead the contractor into believing it would be paid by the landlord.  The contractor assumed the risk of loss when it contracted with the tenant alone.  The contractor acknowledged that the party it was contracting with had a mere leasehold on the property, and there is no indication that the contractor misunderstood or was misled about the nature of the tenant's interest in property.  Furthermore, the landlord's right to approve the renovation plans was a matter between the landlord and the tenant, and it reflects the landlord's interest in the real estate, rather than the landlord's desire to shape the renovation for its own use and benefit.  In addition, the landlord and tenant expressly acknowledged in the tenant improvements letter that the landlord's right to approve the plans would not subject it to liability to any party, and the letter was expressly incorporated into the contractor's written agreement with the tenant.  The landlord's right to inspect the work in progress also reflects the landlord's interest in its property.  Additional facts such as the landlord's right to be named as an additional insured and to be indemnified and defended by the tenant from any claims arising from the contractor's work, indicate only that the landlord was not to be harmed as a result of the renovation project desired and undertaken by its tenant.  These facts do not suggest in any way that the contractor could state quasi-contractual claims against the landlord.

Hayes Mechanical further contends that quasi-contractual relief may be available despite the absence of any wrongdoing on the part of the party against whom restitution is sought.  The cases that Hayes Mechanical relies on for this proposition involved the mistaken payment of a neighbor's property taxes (
Partipilo v. Hallma
n, 156 Ill. App. 3d 806, 510 N.E.2d 8 (1987)) and the erroneous payment of taxes pursuant to a statute that was actually unconstitutional and void (
Board of Highway Commissioners v. City of Bloomington
, 253 Ill. 164, 97 N.E.2d 280 (1911)).  There is nothing in these cases that conflicts with the views expressed above.  The circumstances are simply not analogous to the present dispute in which there were no allegations that money was mistakenly or erroneously conveyed.  Hayes Mechanical also cites 
Woodfield Lanes, Inc. v. Village of Schaumburg
, 168 Ill. App. 3d 763, 523 N.E.2d 36 (1988), for the proposition that quasi-contractual relief may be available even when the defendant did not request the benefit received.  However, 
Woodfield Lanes
 is distinguishable because even though the defendant in that case did not request the benefit, it voluntarily accepted it.   In the present dispute, it was the tenant, not the defendant landlord, which voluntarily accepted the benefit of the contractor's work.

In sum, none of the cases that Hayes Mechanical relies upon sways us from our conclusions that Hayes Mechanical did not and could not allege sufficient facts to state quasi-contract claims against First Industrial.  Furthermore, we would reach the same conclusions even if we had employed the 
de novo
 standard of review that Hayes Mechanical urged upon us, rather than the abuse of discretion standard.  Regardless of the standard of review, Hayes Mechanical stated conclusions, not facts, and the record discloses no facts which might have cured Hayes Mechanical's pleading.

In view of this determination, it is unnecessary for us to discuss the parties' additional arguments regarding the Mechanics Lien Act (770 ILCS 60/1 
et seq
. (West 2000)).  

In conclusion, we are not foreclosing the possibility that a contractor could state claims for 
quantum meruit
 or unjust enrichment against a landlord after a tenant fails to pay the contractor for agreed upon improvements to the property.  However, in this instance, there are no facts indicating that this contractor could factually allege the elements of 
quantum meruit 
or unjust enrichment against the property owner.  Accordingly, the circuit court did not abuse its discretion in denying the contractor's motion for leave to amend its complaint with insufficient allegations of 
quantum meruit
 and unjust enrichment.

Affirmed.

O'Malley, P.J. and McNulty, J., concur.