# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Allen*, 2016 IL App (1st) 151620

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF KEITH M. ALLEN, Petitioner-Appellee, and DEBRA DURHAM ALLEN, Respondent-Appellant. |
| District & No. | First District, Fourth Division<br>Docket Nos. 1-15-1620, 1-15-2146 cons. |
| Filed | December 29, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-D-06148; the Hon. John Thomas Carr, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Paul J. Bargiel, of Paul J. Bargiel, P.C., and Alan D. Hoffenberg, Gloria E. Block, and Tiffany M. Alexander, of Hoffenberg & Block, both of Chicago, for appellant.<br><br>Jay D. Stein and Katya C. Manak, of Stein & Stein, Ltd., of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Justices Gordon and Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1    Keith M. Allen and Debra Durham Allen had been married for less than seven months when they cross-petitioned for dissolution of their marriage pursuant to the Illinois Marriage and Dissolution of Marriage Act. 750 ILCS 5/401 (West 2012). Shortly before their property and maintenance dispute went to trial, Debra sought leave to amend her petition with common-law claims based on 13 premarital years of cohabitation that were "not unlike a marriage." The trial court denied the motion and declined the offer of proof Debra made during the trial, then dissolved the marriage and awarded property and maintenance on the basis of the brief marriage. Debra appeals the two adverse rulings.[1]

¶ 2    Keith, who was born in 1960, has had a long and lucrative association with the McDonald's chain of restaurants, beginning in 1976 with his employment as a crew member and culminating in his ownership in 2004 of six franchised locations. In addition to the restaurants, Keith owns multiple homes and motor vehicles and has other substantial assets. Some of the assets are owned through corporations or a trust, but the precise form of ownership is irrelevant for purposes of this appeal. Debra's financial resources are modest. She was born in 1963, attended college for a few years, has worked in administrative and retail positions, and also has training and some experience in interior design. The couple first cohabitated in Keith's home in 2000 or 2001, however, they have never lived together continuously and, between 2000 and 2012, Debra resided for periods up to six months in Illinois and Indiana and for a year in Michigan. They married in late 2012, but separated by early 2013 when Debra returned to Indiana. In July and August 2013, respectively, they filed cross petitions for dissolution. The parties' primary dispute was whether Debra was entitled to a greater share of the marital property and to maintenance. Discovery ensued, as did motions regarding temporary maintenance and compliance with discovery requests. A trial was scheduled for late 2014 and then rescheduled to early 2015.

¶ 3    Days before the Allens' trial, we issued our decision in *Blumenthal v. Brewer*, 2014 IL App (1st) 132250, 24 N.E.3d 168, recognizing the right of a woman in a same-sex relationship to bring common-law claims to distribute property she had jointly accumulated with her partner while cohabitating for 26 years during the period when Illinois treated same-sex relationships as illicit and did not recognize same-sex marriages.

¶ 4    Debra filed an emergency motion for leave to add a claim of unjust enrichment and/or *quantum meruit* against her husband on the basis of *Blumenthal*. *Blumenthal*, 2014 IL App (1st) 132250, 24 N.E.3d 168. Debra contended that for many years before their wedding ceremony, she and Keith "engaged in a devoted, monogamous, residential and codependent relationship not unlike that of a marriage" and that but for her "dutiful service," Keith would not have accumulated "the substantial wealth that he has today." She asked to postpone the trial and reopen discovery into Keith's assets as far back as the start of the couple's relationship in 1999, and thus encompass the period when Keith first began leasing and franchising McDonald's restaurants. Debra also asked to be awarded $30,000 from Keith with which to retain a financial expert who would analyze and testify to the increase in Keith's assets during

---

[1]We filed an opinion disposing of this case on August 16, 2016, but withdrew that filing and issued this one solely to correct the names of the parties' attorneys listed on a cover sheet submitted to the Illinois Reporter of Decisions. No changes have been made to our decision.

the parties' unmarried years together, and to be awarded $50,000 in attorney fees from Keith so that her divorce attorney could pursue discovery and prepare the appropriate claim(s).

¶ 5     The trial court denied Debra's motion and her motion for reconsideration or, in the alternative, for judicial findings that would allow Debra to take an immediate appeal concerning the applicability of *Blumenthal.* The judge stated, "I believe the Supreme Court in the *Hewitt* case does not allow me to grant the relief requested." The judge was referring to the Illinois Supreme Court's 1979 decision in *Hewitt v. Hewitt*, 77 Ill. 2d 49, 394 N.E.2d 1204 (1979), which rejected equitable or quasi-contract claims between an unmarried, opposite-sex couple.

¶ 6     During the Allens' dissolution trial, the judge sustained Keith's objections to questions which Debra posed to support of her common-law claims, and when Debra asked to make a formal offer of proof, the judge denied the request. After the trial, the judge entered a final judgment order of dissolution in May 2015 and awarded Debra property totaling $18,545 and 6.4 months of maintenance totaling $22,600. The award was far less than Debra suggested in her motion for leave to add a common-law claim based on her premarital "wife-like" support of Keith during some of the years he was building a lucrative career and accumulating substantial assets.

¶ 7     Debra's main contention is that the judge misconstrued the significance of *Hewitt* and *Blumenthal. Hewitt*, 77 Ill. 2d 49, 394 N.E.2d 1204; *Blumenthal*, 2014 IL App (1st) 132250, 24 N.E.3d 168. *Hewitt* concerned an unmarried, opposite-sex couple who had a family-like relationship for 15 years, during which there was no legal impediment to prevent the man and woman from marrying. *Hewitt*, 77 Ill. 2d 49, 394 N.E.2d 1204. Following the breakdown of their relationship, the woman, Victoria, filed for dissolution of her marriage from the man, Robert, but her complaint was dismissed because the couple knowingly never obtained a marriage license or had a marriage ceremony. *Hewitt*, 77 Ill. 2d at 52-53, 394 N.E.2d at 1205. In an amended complaint, Victoria alleged she was entitled to one-half of Robert's property and profits based on his express promise, an implied contract, fraud, and unjust enrichment. *Hewitt*, 77 Ill. 2d at 53, 394 N.E.2d at 1205. The Illinois Supreme Court rejected all of Victoria's claims. The court found that the judiciary should not recognize mutual property rights between unmarried couples for several reasons. First, it is not the judiciary's role to change the laws regarding marriage. *Hewitt*, 77 Ill. 2d at 61, 394 N.E.2d at 1209. Such a significant change in the "delicate area of marriage-like relationships *** [was] best suited to the superior investigative and fact-finding facilities of the legislative branch in the exercise of its traditional authority to declare public policy in the domestic relations field." *Hewitt*, 77 Ill. 2d at 61, 394 N.E.2d at 1209. Second, the Illinois Marriage and Dissolution of Marriage Act expressly prohibited the recognition of common-law marriage, which was precisely the type of relationship that existed between Victoria and Robert. *Hewitt*, 77 Ill. 2d at 62, 394 N.E.2d at 1209 (the statute is intended to strengthen and preserve the integrity of marriage and it explicitly states " 'Common law marriages contracted in this State after June 30, 1905 are invalid.' " (quoting Ill. Rev. Stat. 1977, ch. 40, ¶ 214)). In addition, in enacting the civil law concept of the putative spouse, the legislature clearly had the opportunity to create property rights for a class of unmarried people beyond the putative spouses, but the legislature did not create those rights. *Hewitt*, 77 Ill. 2d at 66, 394 N.E.2d at 1210. The legislature provided that an unmarried person may acquire the rights of a legal spouse only if he or she goes through a marriage ceremony and cohabits with another in the good-faith belief that he or she is validly

married. *Hewitt*, 77 Ill. 2d at 64, 394 N.E.2d at 1210. Thus, the legislature "extended legal recognition to a class of nonmarital relationships, but only to the extent of a party's good-faith belief in the existence of a valid marriage." *Hewitt*, 77 Ill. 2d at 64, 394 N.E.2d at 1210. The court remarked on the fact that during the legislature's deliberations on the statute, the landmark California case on palimony, *Marvin v. Marvin*, 557 P.2d 106 (Cal. 1976) (*en banc*), had been decided and widely publicized. *Hewitt*, 77 Ill. 2d at 64, 394 N.E.2d at 1210. The Supreme Court of California found that partners in nonmarital relationships may bring claims for property division based on both express and implied contracts. *Marvin*, 557 P.2d 106. Our supreme court considered all of these circumstances before concluding there was "a recent and unmistakeable [Illinois] legislative judgment disfavoring the grant of mutual property rights to knowingly unmarried cohabitants." *Hewitt*, 77 Ill. 2d at 64, 394 N.E.2d at 1210. Thus, Illinois public policy, which is found primarily in its statutes, was to disfavor "private contractual alternatives to marriage." *Hewitt*, 77 Ill. 2d at 64, 394 N.E.2d at 1210. *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 307, 671 N.E.2d 668, 674 (1996) (courts look to the state's constitution and statutes to ascertain public policy, and when those are silent, to judicial opinions).

¶ 8        Subsequently, Jane E. Blumenthal, a physician, brought suit to partition a Chicago home that she owned with Eileen M. Brewer, her former domestic partner of 26 years. *Blumenthal*, 2014 IL App (1st) 132250, ¶ 1, 24 N.E.3d 168. The women had raised three children together in the home. *Blumenthal*, 2014 IL App (1st) 132250, ¶ 1, 24 N.E.3d 168. Brewer, a circuit court judge, counterclaimed for various remedies, including imposition of a constructive trust over the property to prevent unjust enrichment arising from Blumenthal's greater net worth at the end of their domestic partnership. *Blumenthal*, 2014 IL App (1st) 132250, ¶ 11, 24 N.E.3d 168. Brewer also sought a constructive trust over the earnings or the sale of Blumenthal's share of her medical practice to prevent unjust enrichment, or in the alternative, restitution of the funds Blumenthal allegedly took from the couple's joint bank account to buy into the medical practice. *Blumenthal*, 2014 IL App (1st) 132250, ¶ 11, 24 N.E.3d 168. The trial court granted Blumenthal's motion to dismiss, finding that, based on the parties' domestic relationship, Brewer's counterclaims were barred by *Hewitt*. *Hewitt*, 77 Ill. 2d 49, 394 N.E.2d 1204. In its ruling on the motion to dismiss, the court did not consider the factual sufficiency of Brewer's counterclaims. *Blumenthal*, 2014 IL App (1st) 132250, ¶ 15, 24 N.E.3d 168.

¶ 9        Brewer appealed to this court and argued, in part, that *Hewitt* had been "implicitly overruled" by subsequent legislation favorable to same-sex domestic partnerships. *Blumenthal*, 2014 IL App (1st) 132250, ¶ 1, 24 N.E.3d 168. We did not agree with Brewer's conclusion and, in any event, we do not have authority to overrule a supreme court decision. *Du Page County Airport Authority v. Department of Revenue*, 358 Ill. App. 3d 476, 486, 831 N.E.2d 30, 39 (2005) (lower courts are bound to follow supreme court precedent); *Hensley v. Hensley*, 62 Ill. App. 2d 252, 259, 210 N.E.2d 568, 572 (1965) (it is not "the function of an appellate court to overrule or attempt to overrule or criticize the decisions of the highest judicial tribunal of our state"); *Sims v. Sneed*, 118 Ill. App. 2d 294, 297, 254 N.E.2d 316, 318 (1969) (an inferior appellate court can not deviate from the public policy established by the highest appellate court); *Agricultural Transportation Ass'n v. Carpentier*, 2 Ill. 2d 19, 27, 116 N.E.2d 863, 867 (1953) ("Where the Supreme Court has declared the law on any point, it alone can overrule and modify its previous opinion, and the lower judicial tribunals are bound by

such decision and it is the duty of such lower tribunals to follow such decision in similar cases.").

¶ 10    Instead, we did not believe *Hewitt* was controlling on the question of whether same-sex domestic partners could bring common-law claims regarding property they accumulated together. *Hewitt*, 77 Ill. 2d 49, 394 N.E.2d 1204. Throughout the entirety of their relationship, Blumenthal and Brewer had been precluded from marrying in Illinois. We focused on public policy and observed an unmistakable and overwhelming trend of recognizing the legitimacy of same-sex domestic partnerships. When *Hewitt* was decided, it was public policy to treat all unmarried relationships as illicit and the supreme court had pointed out, "Illinois' public policy regarding agreements such as the one alleged here was implemented long ago in [an 1882 opinion] where this court said: 'An agreement in consideration of future illicit cohabitation between the plaintiffs is void.' This is the traditional rule, in force until recent years in all jurisdictions." *Hewitt*, 77 Ill. 2d at 58-59, 394 N.E.2d at 1208 (quoting *Wallace v. Rappleye*, 103 Ill. 229, 249 (1882)). However, in the 35 years since *Hewitt*, the Illinois legislature repealed the criminal prohibition on nonmarital cohabitation, prohibited differential treatment of marital and nonmarital children, adopted no-fault divorce in place of the undignified system which had required the court to assign blame or fault to a specific spouse, established civil unions for both opposite-sex and same-sex partners which provided for them to receive all the rights and burdens available to married persons, and extended other protections to nonmarital families. *Blumenthal*, 2014 IL App (1st) 132250, ¶¶ 24, 25, 27, 33, 34, 24 N.E.3d 168 (citing Pub. Act 86-490 (eff. Jan. 1, 1990) (deleting "cohabits" from what is now 720 ILCS 5/11-40 (West 2010)), Pub. Act 83-1372 (eff. July 1, 1985) (creating the predecessor to 750 ILCS 45/3 (West 2012) which extended support obligation to every child regardless of parents' marital status), Pub. Act 80-1429, § 1 (eff. Sept. 12, 1978) (amending probate act to provide for intestate inheritance rights of children of unmarried parents), Pub. Act 84-1028, § 1 (eff. Nov. 18, 1985) (amending pension code to entitle children of unmarried parents to survivor's benefits), Pub. Act 83-954 (eff. July 1, 1984) (allowing either spouse to dissolution on basis of "irreconcilable differences"), 750 ILCS 75/1 *et seq.* (West 2010) (Illinois Religious Freedom Protection and Civil Union Act), and 750 ILCS 80/1 *et seq.* (West 2014) (Religious Freedom and Marriage Fairness Act)). Thus, there were significant indications after *Hewitt*'s publication that Illinois's legislators no longer disfavored unmarried cohabitation or same-sex relationships in general.

¶ 11    Furthermore, some of the authority underpinning *Hewitt* no longer existed when *Blumenthal* was argued in 2014. For instance, the supreme court's discussion of the "traditional rule" to treat all bargains between unmarried couples as illegal contracts was based on a version of the Restatement of Contracts that was abandoned shortly after *Hewitt*'s publication in 1979 when the legal treatise was updated in 1981. *Blumenthal*, 2014 IL App (1st) 132250, ¶ 28, 24 N.E.3d 168. The supreme court's discussion was also based on a section of Corbin on Contracts issued in 1962 that was entitled "Bargains in Furtherance of Immorality" and gave the example of lending money to supply a brothel. *Blumenthal*, 2014 IL App (1st) 132250, ¶ 29, 24 N.E.3d 168 (citing 6A Arthur Linton Corbin, Corbin on Contracts § 1476 (1962)).

¶ 12    Ultimately, we found that *Hewitt* did not control the question of whether Blumenthal and Brewer could bring common-law claims regarding property they accumulated together. The couple in *Hewitt* was an opposite-sex couple who always had the right to marry and take on the

burdens and protections of that legal status, but they had not married. Judicial recognition of their relationship would have been inconsistent with Illinois law, particularly the express ban on common-law marriage. *Hewitt* was and is applicable to opposite-sex couples and is not affected by our decision in *Blumenthal*. In contrast to the parties in *Hewitt*, Blumenthal and Brewer did not have the right to marry in Illinois, and our recognition of property claims between them in 2014 was consistent with the public policy and legislative changes acknowledging same-sex rights that we detailed in our opinion. The couple's relationship ended in 2008 (*Blumenthal*, 2014 IL App (1st) 132250, ¶ 9, 24 N.E.3d 168), which was before Illinois established civil unions as of June 1, 2011 (750 ILCS 75/1 *et seq.* (West 2012)), and legally recognized same-sex marriage in a law that took effect on June 1, 2014 (750 ILCS 80/1 (West 2014)). We rejected the contention that Brewer was attempting to retroactively define the parties' relationship as a marriage or create a common-law marriage in violation of this jurisdiction's express ban on such relationships. *Blumenthal*, 2014 IL App (1st) 132250, ¶¶ 37-38, 24 N.E.3d 168. We addressed only whether a woman who had been prohibited from marrying her domestic partner should also be prohibited from bringing common-law property claims against that person. The combination of the women's inability to marry and the extensive indications that Illinois's public policy favored the recognition of same-sex domestic relationships led us to vacate the dismissal of Brewer's counterclaims on the basis of authority regarding an opposite-sex couple and remand with directions to consider the merits of Blumenthal's motion to dismiss on other grounds. *Blumenthal*, 2014 IL App (1st) 132250, ¶¶ 35, 40, 24 N.E.3d 168.

¶ 13 Accordingly, we disagree with Debra's contention that it was an abuse of discretion for the trial court to deny her leave to add common-law claims to her divorce proceedings based on her premarital relationship with Keith. Debra and Keith are an opposite-sex couple who had the option to marry at any point during the 13 years that preceded their wedding in 2012. *Hewitt*, which rejected similar claims between an unmarried opposite-sex couple, is dispositive. *Hewitt*, 77 Ill. 2d 49, 394 N.E.2d 1204. Any other holding would contravene Illinois public policy, particularly the legislature's ongoing ban on common-law marriage. 750 ILCS 5/214 (West 2014). The trial judge's denial of leave to amend was a sound exercise of his discretion. *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 7, 812 N.E.2d 419, 424 (2004) (when no cause of action can be stated, leave to amend should be denied). Furthermore, given that Debra's proposed claim was deficient, it was not error for the trial judge to refuse Debra's offer of proof. *Blazina v. Blazina*, 42 Ill. App. 3d 159, 166-67, 356 N.E.2d 164, 170 (1976) (wife's deficient complaint did not entitle her to make offer of proof). For these reasons, we affirm the trial court's rulings.

¶ 14 Affirmed.