# Illinois Official Reports

## Appellate Court

---

### *Kopnick v. JL Woode Management Co.*, 2017 IL App (1st) 152054

---

| | |
|---|---|
| Appellate Court Caption | CHARLENE KOPNICK, Plaintiff-Appellant, v. JL WOODE MANAGEMENT COMPANY, LLC; JL WOODE LTD., LLC EXIST; JL WOODE LTD., LLC EXIST, d/b/a HAWTHORNE HOUSE; and HAWTHORNE HOUSE LP, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>Docket No. 1-15-2054 |
| Filed | March 30, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CH-20526; the Hon. Thomas R. Allen, Judge, presiding. |
| Judgment | Affirmed in part, reversed in part, and remanded. |
| Counsel on Appeal | Berton N. Ring and Stuart M. Clarke, of Berton N. Ring, PC, of Chicago, for appellant.<br><br>Jeffrey L. Widman and Jennifer L. Devroye, of Shaw Fishman Glantz & Towbin LLC, of Chicago, for appellees. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Presiding Justice Ellis and Justice Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1    Charlene Kopnick sued her former landlord, claiming a violation of section 5-12-170 of Chicago's Residential Landlord and Tenant Ordinance (RLTO) (Chicago Municipal Code § 5-12-170 (amended Nov. 17, 2010)), a violation of section 2 of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2 (West 2012)), and common law unjust enrichment with regard to her 2014 lease. The trial court granted the landlord's motion to dismiss the three-count action with prejudice pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2014)). On appeal, Kopnick argues her allegations were factually sufficient and that, at minimum, she should have been allowed to amend. This is a case of first impression regarding section 5-12-170 of the RLTO.

¶ 2    We summarize her allegations. Kopnick began renting and residing in a high rise apartment building at 3450 North Lake Shore Drive, Chicago, in January 2013. At issue is a written lease she executed to renew her tenancy for the one-bedroom apartment, Unit No. 2215, at a rate of $1745 per month for the year beginning January 11, 2014. The 2014 lease, which she attached as an exhibit to her complaint, consisted of 18 pages, including a 5-page form contract personalized with names, dates, and dollar amounts, which was followed by 13 pages of various addenda that addressed other details of her tenancy, such as her right to keep pets on the property. Kopnick sued four entities, but the 2014 lease she attached to her complaint disclosed that only one of them, Hawthorne House LP, contracted with her. Therefore, for purposes of this appeal, we will refer to the single entity Hawthorne House as Kopnick's landlord, and, to the extent we can, disregard her references to JL Woode Management Company, LLC; JL Woode Ltd., LLC Exist (*sic*), and JL Woode, Ltd., d/b/a Hawthorne House.

¶ 3    Kopnick alleged that on November 11, 2014, Hawthorne House proposed a lease renewal that would take effect on January 11, 2015, and she attached three pages of the proposed 2015 lease substantiating that the landlord's offer to renew was made 61 days before the expiration of the 2014 lease. Kopnick further alleged, without providing details or a supporting exhibit, that on November 19, 2014, 52 days before the expiration of the 2014 lease, she declined to renew her tenancy for another year. She stated that on that same day, the landlord "charged" her $450.32 as an "insufficient notice fee," although she did not attach an exhibit showing this "charge" or her payment of what she was calling a "penalty" fee for her untimely notice of intent to vacate. Kopnick next stated, "Despite these penalties, [her existing 2014 lease indicated] that [Hawthorne House] need only provide [30] days' notice of an intent to renew or terminate a tenant's lease or tenancy." Again, however, Kopnick did not quote or identify any particular part of the 18-page contract that included that alleged provision. She filed suit on December 23, 2014, and moved out of the apartment by the time her lease expired on January 10, 2015.

¶ 4    In count I, Kopnick alleged the landlord "did not give" her a summary copy of the RLTO, either when offering the 2014 lease or when she executed the 2014 lease, in violation of section 5-12-170 of the RLTO. Chicago Municipal Code § 5-12-170 (amended Nov. 17, 2010). She proposed to represent the interests of herself and the class of individuals who signed a new lease or a renewal lease with her landlord on or after January 1, 2013. The significance of the 2013 date is not made clear by Kopnick's allegations, given that she executed her first lease on

November 9, 2012, for her first occupancy beginning on January 11, 2013, and signed the renewal lease that is at issue on October 29, 2013.

¶ 5    In count II, Kopnick alleged that the landlord required 60 days' notice of her intent to renew or move out at the end of her lease and had "charged" her a daily fee equal to one day's rent for each of the eight days that she had not provided timely notice. She alleged that the late notice fee was found in a combination of paragraphs 13 and 31 of the lease, that "Paragraphs 13 and 31 [were] in violation of § 5-12-140 of the RLTO," and that because the late fee was unfair, unscrupulous, and contrary to public policy, it also violated section 2 of the Consumer Fraud Act. 815 ILCS 505/2 (West 2012). She did not quote or pinpoint the specific lease language or RLTO language that she relied upon; however, Kopnick's allegations seem to be based on paragraph (g) of section 5-12-140 of the RLTO, which states that no rental agreement may provide that the landlord or tenant "may cancel a rental agreement at a different time or within a shorter time period than the other party, unless such provision is disclosed in a separate written notice." Chicago Municipal Code § 5-12-140(g) (amended Nov. 6, 1991). Section 5-12-140(g) is not at issue on appeal. In this count of her pleading, Kopnick proposed to represent the interests of herself and the class of individuals who were tenants of the building after January 1, 2011, and "who gave notice of an intention to vacate the subject matter property less than sixty days before their Leases expired." The relevance of this 2011 date is not apparent, as Kopnick executed her first lease in 2012 for her first occupancy beginning in 2013 and gave notice in 2014 of her intent to vacate in 2015.

¶ 6    Kopnick's final count, count III, consisted to two sentences. She realleged her prior material allegations and added that her landlord's "collection of notice fees and the enforcement of their notice fee policy is an unjust retention of a benefit obtained by coercion." In count III, Kopnick proposed to represent herself and the same class of individuals described in count II.

¶ 7    The day after she filed the complaint, Kopnick filed a motion on December 24, 2014, for class action certification pursuant to section 2-801 of the Code. 735 ILCS 5/2-801 (West 2014).

¶ 8    Kopnick's landlord filed a combined motion to dismiss pursuant to section 2-619.1 of the Code. 735 ILCS 5/2-619.1 (West 2014). This section of the Code allows a party to combine in a single motion arguments pursuant to (1) section 2-615 of the Code, which attack the factual sufficiency of a pleading; (2) section 2-619(a) of the Code, which admit the factual sufficiency of the pleading but assert affirmative matter which bar or defeat the claim; and (3) section 2-1005, which seek summary judgment on the pleading, provided the moving party clearly separates the arguments and their distinctive grounds. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 20, 988 N.E.2d 984; 735 ILCS 5/2-619.1, 2-615, 2-619(a)(9), 2-1005 (West 2014).

¶ 9    Most of the landlord's arguments for dismissal were section 2-615 arguments. 735 ILCS 5/2-615 (West 2014). Hawthorne House argued that lumping together four separate defendants as a single actor resulted in confusing and vague allegations that could not be fairly answered. Hawthorne House also argued that count I did not state a claim because the allegation that no RLTO summary had been attached to the 2014 lease was contradicted by the first exhibit to Kopnick's complaint, which was the 2014 lease, attached to which was what appeared to be the required RLTO summary. The landlord argued that count II did not state a claim because Kopnick had alleged a "charge" but not any actual damages; relied on lease paragraph 13

(regarding a failure to pay the first month's rent), which was irrelevant; and had alleged only in a conclusory statement that enforcing the late fee terms of lease paragraph 31 violated the Consumer Fraud Act. The landlord further argued that count III failed because it was an equitable theory to be applied only when one had no adequate remedy at law, and Kopnick was suing for damages resulting from the terms of a contract. And, finally, under section 2-619, Hawthorne House tendered an affidavit and contended there was no such entity as defendant "J.L. Woode Ltd., LLC Exist" and that the entity with the similar name, defendant "J.L. Woode Management Company, LLC," was not a signator to the lease, owner or manager of the property, or doing business as "Hawthorne House." See 735 ILCS 5/2-619 (West 2014).

¶ 10   After the parties briefed their positions, the court heard oral arguments. Defense counsel argued the merits of the motion and added that Kopnick's pleading singled out only paragraphs 13 and 31 of the lease, but it appeared she was relying on paragraph 3 for her conclusory allegation that she was required to give at least 60 days' notice of her intent to move out and appeared to be relying on paragraph 35 for her conclusory allegation that the landlord was required to give only 30 days' notice of its intent not to renew someone's lease. Thus, the following four paragraphs of the 2014 lease were implicated by the parties' arguments:

¶ 11   Paragraph 3 of the form lease stated in pertinent part, "This Lease Contract will automatically renew month-to-month unless either party gives at least *60* days *** written notice of termination or intent to move-out as required by paragraph 35. *If the number of days isn't filled in, at least 30 days notice is required.*" (The number "60" had been filled into space provided on the form lease.)

¶ 12   Paragraph 13 set out the consequences of "FAILING TO PAY THE FIRST MONTH's RENT," specifically, "If you don't pay the first month's rent when or before the Lease Contract begins, all future rent will be immediately due." The record does not suggest, however, that Kopnick failed to pay the first month's rent due under any of the three annual leases she entered into for the apartment or that the landlord sought to enforce paragraph 13 by collecting "the first month's rent" and accelerating the due date for the remaining 11 months of any annual lease.

¶ 13   Kopnick had alleged "Paragraph 31 of the Defendants' form Lease states the failure to provide the 'move-out notice' or pay the fee is in violation of the Lease." Kopnick did not cite any particular language in paragraph 31, which is a lengthy provision entitled "DEFAULT BY RESIDENT" and states in part that a tenant will be in default if "you [the tenant] fail to give written move-out notice as required by Paragraph *** 35." It appears to this court that she relied on a subparagraph entitled "Acceleration," which states that "rent for the *** renewal period *** will be immediately due and delinquent if, without our written consent (1) you *** give oral or written notice *** of intent to move out before the *** renewal period ends; and (2) you've not paid all rent for the entire *** renewal period."

¶ 14   The other paragraph not mentioned in Kopnick's pleading, paragraph 35, stated in part:

> "MOVE-OUT NOTICE. *Before moving out, you must give our representative advance written notice as provided below*. Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal term. You will still be liable for the entire Lease Contract term if you move out early ***. YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:

*We must receive advance written notice of your move-out date.* The advance notice must be at least the number of days of notice required in paragraph 3. Oral move-out notice will not be accepted and will not terminate your Lease Contract.

Your move-out notice must not terminate the Lease Contract sooner than the end of the Lease Contract term or renewal period.

YOUR NOTICE WILL NOT BE ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE. You must obtain from our representative written acknowledgment that we received your move-out notice. We will notify you of our intention not to renew your lease at least thirty days before it expires so long as you are not in default under the terms of your Lease Contract."

¶ 15 As we indicated above, although she did not specify a particular paragraph, it appears that Kopnick was relying on paragraph (g) of section 5-12-140 of the RLTO, which states that no rental agreement may provide that the landlord or tenant "may cancel a rental agreement at a different time or within a shorter time period than the other party, unless such provision is disclosed in a separate written notice." Chicago Municipal Code § 5-12-140(g) (amended Nov. 6, 1991).

¶ 16 The other RLTO section she specifically relied upon, section 5-12-170, stated in relevant part:

"Summary of ordinance attached to agreement.

The commissioner of the department of planning and development shall prepare a summary of this chapter, describing the respective rights, obligations and remedies of landlords and tenants hereunder, and shall make such summary available for public inspection and copying. The commissioner shall also, after the city comptroller has announced the rate of interest on security deposits on the first business day of the year, prepare a separate summary describing the respective rights, obligations and remedies of landlords and tenants with respect to security deposits, including the new interest rate as well as the rate for each of the prior two years. The commissioner shall also distribute the new rate of security deposit interest, as well as the rate for each of the prior two years, through public service announcements to all radio and television outlets broadcasting in the city. A copy of such summary shall be attached to each written rental agreement when any such agreement is initially offered to any tenant or prospective tenant by or on behalf of a landlord and whether such agreement is for a new rental or a renewal thereof. Where there is an oral agreement, the landlord shall give to the tenant a copy of the summary." Chicago Municipal Code § 5-12-170 (amended Nov. 17, 2010).

¶ 17 Also relevant here is that if a tenant establishes in a civil proceeding that the landlord violated section 5-12-170, the tenant is entitled to recover $100.00 in damages (Chicago Municipal Code § 5-12-170 (amended Nov. 17, 2010)), and court costs and reasonable attorney fees (Chicago Municipal Code § 5-12-180 (amended Nov. 1, 1991)).

¶ 18 As oral arguments continued, Hawthorne House's counsel pointed out that rather than imposing a shorter time period on one of the parties as Kopnick had alleged, (1) lease paragraph 3 actually required "either party" to give at least 60 days' notice and (2) that the figure "60" was typed onto the form contract above the preprinted statement "If the number of days isn't filled in, at least 30 days notice is required," which counsel argued was significant

because Illinois authority indicates a typed portion prevails over a printed portion of a contract. Furthermore, Kopnick had alleged the landlord gave her 61 days' notice, which was an allegation the landlord was actually in compliance with the 60 day requirement imposed on both parties.

¶ 19    With regard to count I, Kopnick's attorney then argued that the 2014 lease attachment that might appear to be the required RLTO summary was only a partial summary, which was insufficient. Counsel offered to amend count I in order to correct the allegation that there was "no summary" to state there was "no full summary" attached to the lease. With regard to counts II and III, Kopnick's attorney admitted that his client never paid the "charge" and contended she was deliberately not paying it to avoid waiving her legal claims due to the voluntary payment doctrine. Counsel also argued that even without payment, "we've established actual damages in the complaint." He further argued, however, "we can re-plead to make that more clear if Your Honor would like, but if we're asking solely for injunctive relief [to stop the 'further charging or collection of late notice fees'], then we don't need to establish actual damages in the complaint." Also, "if Your Honor wants us to plead in more particularity every single way in which the Defendants are going about trying to collect this sum from the Plaintiff, we can." Counsel next argued that it was Hawthorne House's "policy" to hold itself only to 30 days notice, while holding Kopnick to a 60 day requirement, and that this discrepancy was "an unfair business practice."

¶ 20    At the conclusion of oral arguments, the court granted the dismissal motion on the basis of section 2-615 and did not reach the section 2-619 argument. Despite counsel's statement at the hearing that the landlord's attachment to the 2014 lease was only a partial and insufficient summary of the RLTO, the trial court found, as a matter of law, that the attachment satisfied section 5-12-170 of the RLTO. The trial court said:

"It's there. It's there by your exhibit, it's there—you can call it a half a summary, you can call it a, you know, a partial summary, you can call it not an updated summary, it's there. It's attached. I can't wish that away, it's there.

So Count 1 I have to dismiss, and it's dismissed with prejudice. Because you can't un-plead your way out of that, you can't un-ring the bell, it's there. You said it's not there, it is there, and I think the Defendant's motion is well founded on that provision, because it's attached."

With regard to Count II's allegations of consumer fraud, the court found that paragraph 3 of the lease prominently imposed a 60-day notice period for both parties and that because Kopnick had not paid the "charge" or fee, she had no actionable damages. The court also found that Kopnick could not maintain the claim of unjust enrichment set out in Count III, given that "She didn't lose any money, nobody got hurt." The trial court entered a written order disposing of the claims with prejudice and this appeal followed.

¶ 21    A dismissal pursuant to section 2-615(a) is reviewed *de novo*. *Reynolds*, 2013 IL App (4th) 120139, ¶ 25, 988 N.E.2d 984. A section 2-615(a) argument for dismissal attacks the legal sufficiency of the complaint based on defects apparent on its face. *Reynolds*, 2013 IL App (4th) 120139, ¶ 25, 988 N.E.2d 984. A section 2-615(a) argument poses the question of whether the facts alleged by the plaintiff, viewed in the light most favorable to the plaintiff, and all reasonable inferences that may be drawn from those facts as true, are sufficient to state a cause of action upon which relief may be granted. *Reynolds*, 2013 IL App (4th) 120139, ¶ 25, 988 N.E.2d 984. A cause of action should not be dismissed with prejudice pursuant to section

2-615(a) unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recover. *Reynolds*, 2013 IL App (4th) 120139, ¶ 25, 988 N.E.2d 984. When ruling on a section 2-615 motion, the court may consider (1) facts apparent from the face of the pleadings, (2) matters subject to judicial notice, and (3) judicial admissions in the record. *Reynolds*, 2013 IL App (4th) 120139, ¶ 25, 988 N.E.2d 984 (citing *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385, 830 N.E.2d 575, 577 (2005), and *Thurman v. Champaign Park District*, 2011 IL App (4th) 101024, ¶ 8, 960 N.E.2d 18).

¶ 22    Applying this standard to the dismissal of count I, we find that the ruling was in error. Contrary to the trial court's finding, it is apparent from the face of the lease attachment that it is not the RLTO summary described and mandated by section 5-12-170 of the RLTO. Chicago Municipal Code § 5-12-170 (amended Nov. 17, 2010). Section 5-12-170's requirement that the commissioner prepare a summary of "this chapter" is a reference to chapter 5-12 of the Municipal Code of Chicago, which is the entire RLTO. Chicago Municipal Code § 5-12-010 *et seq.* (2010). The Municipal Code of Chicago is divided into titles, chapters, sections, and then paragraphs. For instance, title 5 of the Municipal Code of Chicago concerns "Housing and Economic Development." Within title 5 is chapter 5-12, where the City Council specified in section 5-12-010, "*This chapter* shall be known and may be cited as the 'Residential Landlord and Tenant Ordinance,' and shall be liberally construed and applied to promote its purposes and policies." (Emphasis added.) Chicago Municipal Code § 5-12-010 (amended Mar. 31. 2004). Thus, the required "summary of this chapter" is supposed to be a summary of the entire RLTO. A fundamental rule of statutory construction is to apply the legislating body's language as it was written (*Alternate Fuels, Inc. v. Director of the Illinois Environmental Protection Agency*, 215 Ill. 2d 219, 238, 830 N.E.2d 444, 454 (2004)), and we adhere to that principle here. On October 29, 2013, when Kopnick executed the lease at issue, the RLTO was divided into 23 sections numbered from 5-12-010 to 5-12-200. Chicago Municipal Code § 5-12-010 *et seq.* The two-page exhibit to Kopnick's 2014 lease, however, summarizes only sections 5-12-010, 5-12-020, 5-12-040, 5-12-050, 5-12-080, and 5-12-081 of the RLTO and omits all the subsequent sections numbered up to section 5-12-200. Chicago Municipal Code § 5-12-010 *et seq.* It does not even summarize section 5-12-170. Chicago Municipal Code § 5-12-170 (amended Nov. 17, 2010). Thus, even a cursory review of the lease attachment indicates it is not a complete summary of "this chapter" of Chicago's ordinance regarding residential tenancies.

¶ 23    Moreover, the omitted sections offer significant protection to tenants, and their absence from the summary that was attached to Kopnick's complaint is not in keeping with the ordinance's stated purpose. The omitted sections of the RLTO spell out some of the landlord's duties, such as giving the tenant notice of code citations issued against the property. The omitted sections also describe tenant remedies for minor and major defects, including withholding rent and terminating the lease. The omitted sections also describe the potential consequences of either parties' failure to perform their duties, such as the landlord's failure to provide utilities and the tenant's failure to timely pay the rent. Chicago Municipal Code §§ 5-12-100, 5-12-110, 5-12-140 (amended Nov. 6, 1991). In other words, these omitted sections inform landlords and tenants of what may result from their failure to live up to their agreement.

¶ 24    These omissions are significant because the City Council (1) expressly provided in section 5-12-010 that the RLTO is to be "liberally construed and applied to promote its purposes and

policies" and (2) said "[i]t is the purpose of this chapter and the policy of the city, in order to protect and promote the public health, safety and welfare of its citizens, to establish the rights and obligations of the landlord and the tenant to the rental of dwelling units, and to encourage the landlord and the tenant to maintain and improve the quality of housing." Chicago Municipal Code § 5-12-010 (amended Mar. 31, 2004). Attaching only a partial summary of the RLTO to a lease would not be as helpful as attaching a full summary and is not in keeping with the RLTO's stated purpose.

¶ 25        We are not concluding that Kopnick adequately alleged a cause of action based on the RLTO. We have no way of knowing whether she is capable of pleading a compensable RLTO violation and, more importantly, proving a compensable RLTO violation. We have no opinion as to whether she was actually given a full summary of the RLTO but attached only part of the document to her complaint. Nevertheless, our brief comparison of the RLTO's plain language to the 2014 lease attachment suggests that the trial court misconstrued the attachment and its significance in the proceedings when the court said to Kopnick's attorney, "you said it's not there, it is there."

¶ 26        We are mindful of the principle that when statutory or ordinance language is clear, we are to apply the language as written without resort to further aids of construction. *Alternate Fuels*, 215 Ill. 2d at 238, 830 N.E.2d at 455 (citing *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504, 732 N.E.2d 528, 535 (2000)). However, our interpretation of the plainly worded municipal ordinance is bolstered by our consultation to the actual RLTO summary that is available on the City of Chicago's public website and was in effect when Kopnick executed the 2014 lease. Information on the municipality's public website is subject to judicial notice. See *People v. Vara*, 2016 IL App (2d) 140849, ¶ 37, 68 N.E.3d 108 (taking judicial notice of the federal government's National Sex Offender Public Website); *People v. Clark*, 406 Ill. App. 3d 622, 633, 940 N.E.2d 755, 766 (2010) (indicating information acquired from mainstream Internet sites is sufficiently reliable to be the subject of judicial notice and that an appellate court may take judicial notice of fact that the trial court did not); *People v. Crawford*, 2013 IL App (1st) 100310, ¶ 118 n.9, 2 N.E.3d 1143 (indicating the appellate court may take judicial notice of information on a public website even though the information was not in the record on appeal); *Village of Catlin v. Tilton*, 281 Ill. 601, 602-03, 117 N.E. 999, 999 (1917) (indicating a court may take judicial notice of facts that are not in reasonable dispute in that the facts are either (1) generally known within the jurisdiction, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned). The commissioner's July 2010 RLTO summary that is available on the government website consisted of four pages, not two, and included information about nearly every section of the RLTO. See City of Chicago Residential Landlord and Tenant Ordinance Summary, https://www.cityofchicago.org/content/dam/city/depts/dcd/general/housing/RLTO English.pdf (last visited Jan. 23, 2017).[1] Furthermore, toward the top of the first page of the official RLTO summary is the statement, "At initial offering, *this* Summary of the ordinance

_____

[1]In 2013 the City Council updated the RLTO to require landlords to abate bed bugs and to require tenants to cooperate in the effort. Chicago Municipal Code § 5-12-101 (adopted at Chi. City Clerk J. Proc. 55787 (June 5, 2013)), http://chicityclerk.com/file/6682/download?token=k9Gf75LG. Accordingly, the commissioner issued a revised RLTO summary in 2016 which is currently in effect and available on the government's website. See https://www.cityofchicago.org/ content/dam/city/depts/dcd/general/housing/ RLTOEnglish.pdf (last visited Jan. 23, 2017).

must be attached to every written agreement and also upon initial offering for renewal." (Emphasis added.) Thus, our consultation to the document on the government website confirms our conclusion that the two-page summary Kopnick attached to her complaint, which addressed only the initial sections of the RLTO, is not what the City Council intended to be attached to a lease. It bears repeating, however, that we are not finding that Kopnick's pleading was sufficient and that we can predict if she is capable of pleading or proving an RLTO violation. We are only concluding that what was attached to Kopnick's complaint was not the RLTO summary described and required by section 5-12-170 of the RLTO.

¶ 27 Hawthorne House argues, however, that Kopnick's appellate arguments misconstrue section 5-12-170 and that in fact the landlord complied with every requirement placed upon it by section 5-12-170. In order to address the landlord's argument, we return to the language of section 5-12-170. As quoted fully above, section 5-12-170 imposes four obligations on the commissioner of Chicago's department of planning and development and one obligation on landlords. The first obligation is that the commissioner "shall prepare a summary of this chapter" of the Municipal Code of Chicago, "describing the respective rights, obligations and remedies of landlords and tenants hereunder." Chicago Municipal Code § 5-12-170 (amended Nov. 17, 2010). The commissioner then "shall make such summary available for public inspection and copying." Chicago Municipal Code § 5-12-170 (amended Nov. 17, 2010). The third and fourth obligations are that the commissioner "shall also *** prepare a separate summary describing the respective rights, obligations, and remedies of landlords and tenants with respect to security deposits including the new interest rate [announced for the new year by the city comptroller]" and "shall also" publicize the updated security deposit information "through public service announcements to all radio and television outlets broadcasting in the city." Chicago Municipal Code § 5-12-170 (amended Nov. 17, 2010). In our opinion, the commissioner could comply with section 5-12-170 by preparing a RLTO summary that remains the same from year to year until the City Council amends the RLTO, and the commissioner's security deposit interest rate summary would have to be updated at the beginning of each new year. Section 5-12-170 next imposes an obligation on landlords, stating: "A copy of such summary shall be attached to each written rental agreement *** whether such agreement is for a new rental or a renewal thereof," and even when parties forego the formality of a written lease and enter into an oral contract, "the landlord shall give to the tenant a copy of the summary." Chicago Municipal Code § 5-12-170 (amended Nov. 17, 2010).

¶ 28 Based on this language, we agree with the landlord's contention that section 5-12-170 describes two "separate" summaries, the first of which concerns "this chapter" (the RLTO sections), and the second of which concerns security deposits. However, we are not persuaded that the landlord's only obligation is to provide the security deposit summary with each oral or written lease. According to the landlord's reading of section 5-12-170, the RLTO summary need only be made available by the commissioner for public inspection and copying. Continuing to parse the ordinance language, the landlord argues the separate security deposit summary is to be publicized by the commissioner through radio and television broadcasts and distributed by landlords as an attachment to every offer to lease or every executed lease. The landlord emphasizes that section 5-12-170 next states "[a] copy of such summary shall be attached," which is a single summary and that section 5-12-170 does not literally say "[a] copy of [these summaries] shall be attached" or "[a] copy of [each] such summary shall be attached." Chicago Municipal Code § 5-12-170 (amended Nov. 17, 2010). The landlord

contends the City Council would not have required the commissioner to make the first summary available to the public if it had intended for landlords to be required to make it available to tenants.

¶ 29 We disagree with Hawthorne House's interpretation of section 5-12-170 for several reasons. One reason is that the City Council gave section 5-12-170 the title "Summary of ordinance attached to rental agreement," demonstrating the intention of the legislating body that information about the "ordinance," not just information about security deposits, is to be "attached to [every] rental agreement." Chicago Municipal Code § 5-12-010 (amended Mar. 31, 2004). Another reason is that the City Council included a preamble to the RLTO indicating its purpose is to protect renters and raise the standard of Chicago's rental housing. Chicago Municipal Code § 5-12-010 (amended Mar. 31, 2004). In our opinion, this purpose is strongly furthered when landlords and tenants are informed of their numerous legal rights and obligations to each under the entire RLTO and can act accordingly, and this purpose is not readily served by informing them only about the proper handling of security deposits. Providing the security deposit information is helpful, but providing the full RLTO information is even more helpful. Another reason for rejecting Hawthorne House's interpretation is that sound statutory construction requires us to read the ordinance language as a whole and reconcile all relevant language. *Michigan Avenue National Bank*, 191 Ill. 2d at 504, 732 N.E.2d at 535 ("One of the fundamental principles of statutory construction is to view all provisions of an enactment as a whole. Words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute."). When we applied this principle above, we noted that the ordinance imposes four obligations on the commissioner and one obligation on landlords. The ordinance indicates the commissioner (1) "*shall* prepare a summary of this chapter, describing the respective rights, obligations, and remedies of landlords and tenants hereunder" (2) "*shall* make such summary available for public inspection and copying," (3) "*shall also* *** prepare a separate summary *** [regarding] security deposits, including the new [year's] interest rate as well as the rate for each of the prior two years" and (4) "*shall also* distribute [the new security deposit information] *** through public services announcements." (Emphases added.) Chicago Municipal Code § 5-12-170 (amended Nov. 17, 2010). Then "[a] copy of such summary shall be attached to each written rental agreement" or "give[n] to the tenant" who enters into an oral rental agreement. Chicago Municipal Code § 5-12-170 (amended Nov. 17, 2010). We found that a plain reading of section 5-12-170 within the context of the ordinance compels the conclusion that the "summary" that the landlord must distribute consists of all the information the commissioner has prepared, including the RLTO summary, which need be updated only when the City Council amends the RLTO and the security deposit information which must be updated with every new year. Chicago Municipal Code § 5-12-170 (amended Nov. 17, 2010). Furthermore, this reading is supported by the legislative history of the RLTO. When the City Council first enacted the RLTO in 1986, it did not address security deposits and stated only:

> "Summary of ordinance attached to Rental Agreement. The Commissioner of the Department of Housing shall prepare a summary of this chapter, describing the respective rights, obligations and remedies of landlords and tenants hereunder, and shall make such summary available for public inspection and copying. A copy of such summary shall be attached to each written rental agreement when any such agreement is initially offered to any tenant or prospective tenant by or on behalf of a landlord and

whether such agreement is for a new rental or a renewal thereof. Where there is an oral agreement, the landlord shall give the tenant a copy of the summary." Chicago Municipal Code § 5-12-170 (added at Chi. City Clerk J. Proc. 33795 (Sept. 8, 1986) (formerly Ordinance No. 192.1-7)).

¶ 30  It was only subsequently, in 1997, that the City Council amended section 5-12-170 by inserting the language regarding security deposits (Chicago Municipal Code § 5-12-170 (amended at Chi. City Clerk J. Proc. 45167 (May 5, 1997))) and added section 5-12-081 of the Municipal Code of Chicago to require the city comptroller to determine and announce the rate of interest on security deposits. Chicago Municipal Code § 5-12-081 (added at Chi. City Clerk J. Proc. 45168 (May 14, 1997)). We are confident that when the City Council sandwiched the security deposit language into the existing RLTO, it intended to impose additional requirements on landlords, not to reduce their obligations or reduce the information that was conveyed to tenants.

¶ 31  Accordingly, the 2014 lease exhibit indicates two things to this court. First, because exhibits become part of a pleading and prevail over the allegations (*Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 18, 983 N.E.2d 1044), the presence of the summary overcame Kopnick's allegation that there was *no* summary attached to her 2014 lease. In effect, Kopnick pled that an RLTO summary was attached to her 2014 lease, which is not actionable. There is a principle that courts are to construe pleadings liberally with a view toward doing substantial justice between the parties (*Cole v. Guy*, 183 Ill. App. 3d 768, 773, 539 N.E.2d 436, 440 (1989)), but that principle does not correct or replace defective allegations. When Kopnick effectively pled that a RLTO summary was attached to her 2014 lease, she did not plead facts sufficient to state a cause of action upon which relief may be granted pursuant to the RLTO and she gave the trial court reason to dismiss Count I as factually deficient.

¶ 32  Second, Kopnick's allegations were insufficient to show that liability may attach. However, the exhibit suggests that Kopnick might be capable of pleading an ordinance violation and that the "with prejudice" portion of the ruling is contrary to the principle that "a cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429, 856 N.E.2d 1048, 1053 (2006); *Reynolds*, 2013 IL App (4th) 120139, ¶ 25, 988 N.E.2d 984. The Code begins with the statement: "[t]his Act shall be liberally construed, to the end that controversies may be speedily and finally determined according to the substantive rights of the parties." 735 ILCS 5/1-106 (West 2014). Section 2-616(a) of the Code provides that the trial court may allow amendments to pleadings on just and reasonable terms, at any time before final judgment. 735 ILCS 5/2-616(a) (West 2014). Plaintiffs do not have an absolute and unlimited right to amend (*Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 6, 812 N.E.2d 419, 424 (2004)), and whether the trial court grants leave to amend is at the court's sound discretion (*Hayes Mechanical*, 351 Ill. App. 3d at 7, 812 N.E.2d at 424). The factors we consider when determining whether the trial court abused its discretion are: "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273, 586 N.E.2d 1211, 1215-16 (1992). Applying these factors, we find that the trial court abused its discretion in rendering a "with prejudice"

dismissal of Count I and denying Kopnick leave to amend, given that (1) Kopnick proposed allegations that would correct the defects of her original pleading, (2) amending would not prejudice or surprise Hawthorne House because the dismissed complaint was the only pleading on file and the defendant's discovery into possible defenses was still available, (3) the proposed amendment was timely made at the preliminary stages of this relatively new case, and (4) Kopnick had no previous opportunities to amend. The trial court reasoned that the dismissal should be final and without leave to amend because "you can't un-ring the bell." The fact that it might be difficult to forget information once it is known is not reason to prevent Kopnick from attempting to clarify her allegations and grounds for relief. Thus, while the exhibit to the complaint justified dismissing count I, it did not justify dismissing it with prejudice. Kopnick should be permitted, if she chooses, to amend count I. *Reynolds*, 2013 IL App (4th) 120139, ¶ 28, 988 N.E.2d 984. Accordingly, we affirm the dismissal of count I, reverse the denial of leave to amend count I, and remand for further proceedings as to the RLTO claim.

¶ 33 Kopnick next argues that the RLTO summary attached to her 2014 lease should have contained the most current security deposit information in order to comply with the RLTO, but it did not. She presents this argument for the first time in her appellate reply brief. As a court of review, we will not consider arguments that were never made in the trial court. *Baker v. Collins*, 29 Ill. 2d 410, 415, 194 N.E.2d 353, 356 (1963) (indicating that theories which were not raised in the pleadings or considered by the trial court will not be considered on appeal); *Eagan v. Chicago Transit Authority*, 158 Ill. 2d 527, 534, 634 N.E.2d 1093, 1097 (1994) (indicating it is well established that "issues not raised in the trial court may not be raised for the first time on appeal"). See also Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (arguments raised for the first time in a reply brief, at appellate arguments, or in a petition for appellate rehearing are waived on appeal). Our ruling does not affect Kopnick's right on remand to address the security deposit summary requirement in her amended RLTO claim.

¶ 34 Our review of counts II and III, however, lead us to conclude that those counts were properly dismissed with prejudice. Both counts ("VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT" and "UNJUST ENRICHMENT") concern Kopnick's purported "double rent" obligation, which is the term she coined for the simultaneous obligation to pay her current month's rent and the late notice fee. Kopnick, however, paid only her normal monthly rent obligation and did not pay the $450.32 "charge" for giving insufficient notice of her intent to vacate the apartment. In count II, Kopnick sought a permanent injunction in order to halt the landlord's "unfair and deceptive" "policy of charging double rent" and "policy of including [language to that effect in its form lease]." Count II fails because precedent indicates that Kopnick's "failure to allege specific, actual damages precludes a claim relying on the Consumer Fraud Act." *Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 911 N.E.2d 1049 (2009) (indicating that the Consumer Fraud Act provides remedies for purely economic injuries and that emotional damages are not compensable); *Xydakis v. Target, Inc.*, 333 F. Supp. 2d 686, 688 (N.D. Ill. 2004) (indicating that the Illinois legislature "made it clear that only parties actually harmed by *** a violation [of the Consumer Fraud Act] could bring a private action"). Mere " 'aggravation and inconvenience' " is not compensable under the statute. *Xydakis*, 333 F. Supp. 2d at 688 (quoting *Roche v. Fireside Chrysler-Plymouth, Mazda, Inc.*, 235 Ill. App. 3d 70, 86, 600 N.E.2d 1218, 1228 (1992) (when car dealer failed to sell consumer "the new Laser based on the terms of the original agreement or to return her used

car or the equity in it, a direct violation of the Consumer Fraud Act occurred and resulted in damage to plaintiff"). The cited cases clearly discuss this concept, but Kopnick apparently misreads them and comes to the opposite conclusion. Moreover, she did not propose to the trial court an amended version of her complaint that would cure the defect in her pleading, which she was required to do in order to show that the trial court abused its discretion in denying leave to amend. *In re Huron Consulting Group, Inc.*, 2012 IL App (1st) 103519, ¶ 68, 971 N.E.2d 1067 ("In order for the circuit court to exercise its discretion in deciding on the motion [for leave to amend], it must review the proposed amended pleading to determine whether it would [meet the four factors set out in *Loyola Academy*, 146 Ill. 2d at 273-74, 586 N.E.2d at 1215-16] ***."). Instead, Kopnick stood on her existing allegations when her attorney argued that payment was unnecessary to maintain the claim. Kopnick has consistently refused to pay the "charge" and she did not allege that any consequences have resulted from her refusal. Thus, any damages under count II would be entirely speculative, rather than specific and actual. She has argued that even though she did not incur any economic injury, she was "harmed" by the landlord's "insidious" practices and entitled to permanent injunctive relief for herself and "all others similarly situated." Kopnick's argument misstates the nature of the equitable remedy of a permanent injunction. A party seeking a permanent injunction must not only allege a recognized cause of action, but must also succeed on the merits of the cause of action in order to be entitled to permanent injunctive relief. *Town of Cicero v. Metropolitan Water Reclamation District of Greater Chicago*, 2012 IL App (1st) 112164, ¶ 18, 976 N.E.2d 400. See also *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 431, 821 N.E.2d 1099, 1147 (2004) (indicating a permanent injunction is contingent upon the plaintiff prevailing at trial on the merits of its claim). A permanent injunction is not a separate cause of action but an equitable remedy that a court can order when the plaintiff succeeds on the underlying cause of action but the available legal remedy would not be adequate. *Town of Cicero*, 2012 IL App (1st) 112164, ¶ 46, 976 N.E.2d 400. Furthermore, to the extent Kopnick is arguing that the lease contained different notice terms for the landlord and tenant, and that the landlord gave itself an advantage, she is wrong. The four paragraphs we quoted above imposed the same 60 days on both parties, Kopnick has not cited or argued any contract language to the contrary, and she alleged that the landlord actually gave her 61 days' notice. Thus, there is no basis in fact or reasonable inference to deem the written contract or landlord's practice unfair within the meaning of the Consumer Fraud Act. Kopnick did not state a cause of action. Thus, count II was properly dismissed with prejudice.

¶ 35    Kopnick does not argue the sufficiency of the allegations she set out in Count III, which consisted of only two sentences. The first sentence stated, "85. Plaintiff restates and re-alleges paragraphs 1-80 *** as if fully set forth herein." The second sentence read, "86. Defendants' collection of notice fees and the enforcement of their notice fee policy is an unjust retention of a benefit obtained by coercion." In any event, Kopnick's failure to tender the late notice fee to her landlord means she cannot sustain a claim for unjust enrichment on the basis of the unpaid "charge." Unjust enrichment occurs where one person has received money under such circumstances that in equity and good conscience he ought not retain. *Cohon v. Oscar L. Paris Co.*, 17 Ill. App. 2d 21, 149 N.E.2d 472 (1958). Because Kopnick did not allege her landlord "received" and "retain[ed]" the late notice fee, Kopnick did not state a claim of unjust enrichment. She also has no apparent grounds for amendment and has not argued that she

should have been given leave to amend count III. Accordingly, we conclude that count III was properly dismissed with prejudice.

¶ 36      Based on the above, we (1) reverse the trial court's denial of leave to amend the allegations of a violation or violations of the RLTO, (2) remand for further proceeds as to the RLTO claim only, and (3) affirm the trial court's ruling as to the other claims.

¶ 37      Affirmed in part, reversed in part, and remanded.