# Illinois Official Reports

## Appellate Court

***Taylor, Bean, & Whitaker Mortgage Corp. v. Cocroft**, 2018 IL App (1st) 170969*

| | |
|---|---|
| Appellate Court Caption | TAYLOR, BEAN, & WHITAKER MORTGAGE CORPORATION, Plaintiff-Appellee, v. DAVID COCROFT and VEYNECIA COCROFT, Defendants (David Cocroft, Defendant-Appellant). |
| District & No. | First District, Fourth Division<br>Docket No. 1-17-0969 |
| Filed | May 3, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2012-CH-34114; the Hon. Anna M. Loftus, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | David Cocroft, of Country Club Hills, appellant *pro se*.<br><br>Kimberly A. Jansen, of Hinshaw & Culbertson LLP, of Chicago, for appellee. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Presiding Justice Burke and Justice Ellis concurred in the judgment and opinion. |

**OPINION**

¶ 1  The instant appeal arises from a foreclosure action filed against defendant David Cocroft and his wife, Veynecia [1] Cocroft, by plaintiff Taylor, Bean, & Whitaker Mortgage Corporation. The trial court granted summary judgment in plaintiff's favor, and the property was sold at a judicial sale, at which plaintiff was the highest bidder. Defendant appeals, arguing (1) the trial court erred in permitting plaintiff to amend its complaint to substitute plaintiff as a party instead of the originally-named plaintiff, (2) the trial court erred in denying defendant's motion to strike the note attached to the amended complaint, (3) the trial court erred in granting plaintiff's motion for summary judgment despite defendant's allegation that he had not received the required grace period notice and his arguments that plaintiff was not the holder of the note, and (4) the trial court erred in confirming the sale because justice was not done. For the reasons that follow, we affirm the trial court's judgment.

¶ 2                                   BACKGROUND

¶ 3  On September 10, 2012, Colonial Bank filed a complaint to foreclose mortgage against defendant and his wife, Veynecia, which alleged that the mortgagee was "M.E.R.S., Inc., as Nominee for Taylor, Bean & Whitaker Mortgage Corp." and further alleged that Colonial Bank was the "holder of the Mortgage and Note." Attached to the complaint was a copy of the mortgage, which named Mortgage Electronic Registration Systems, Inc. (MERS), as the mortgagee acting solely as nominee for the lender, and named plaintiff as the lender. Also attached to the complaint was a copy of the note, which was in the amount of $572,000 and was executed by defendant and by one of plaintiff's representatives.

¶ 4  Defendant was served with the summons and complaint on September 16, 2012.

¶ 5  On December 18, 2012, plaintiff filed a motion for leave to file an amended complaint to substitute plaintiff for Colonial Bank as the named plaintiff in the foreclosure case.

¶ 6  On January 14, 2013, defendant filed a *pro se* appearance and, on the same day, filed an "Objection to Plaintiffs' [*sic*] Motion for Default and Motion for Substitution of Plaintiff,"[2] arguing, *inter alia*, that the complaint was defective, that plaintiff lacked standing, that defendant had rescinded the mortgage on May 19, 2009, and that the complaint was time-barred because there had been a previous foreclosure complaint that had been voluntarily dismissed and the instant complaint was filed more than one year from the date of that dismissal. The trial court set a briefing schedule on defendant's motions, which also included a motion for sanctions against plaintiff's attorney and a motion to dismiss that does not appear in the record on appeal. On February 19, 2013, plaintiff renoticed its motion for leave to amend the complaint, setting the motion for hearing on May 7, 2013, and defendant filed another "Objection to Plaintiffs' [*sic*] Petition to Amend Complaint" on March 12, 2013. On March 13, 2013, plaintiff filed a motion for extension of time to respond to defendant's motions or, in the alternative, leave to file an amended complaint, in which it renewed its request for leave to file an amended complaint.

_____

[1]We note that Veynecia Cocroft's first name is spelled in various ways throughout the record on appeal. We use the spelling that appears on the notice of appeal and appellate briefs.

[2]The record on appeal does not indicate that plaintiff had filed a motion for a default judgment.

¶ 7 On April 19, 2013, defendant filed a *pro se* motion for partial summary judgment; the motion raised the same general issues as his previous filings but did not specify why summary judgment would be appropriate.

¶ 8 On May 1, 2013, plaintiff filed another motion for leave to amend the complaint, claiming that Colonial Bank had been named as the original plaintiff "due to scriverners [*sic*] error." The motion also claimed that plaintiff "also intends to attach the relevant Assignment of Mortgage/Deed to its amended pleading to further substantiate its standing to foreclose in this action." The motion further claimed that amending the complaint would "resolve any need" for plaintiff to respond to defendant's motion to dismiss or motion for partial summary judgment.[3] On June 18, 2013, plaintiff filed a motion for extension of time to file its proposed amended complaint, which it set for hearing on September 30, 2013. On the same day, it filed a proposed amended complaint. Defendant filed a *pro se* objection to the motion, raising the same arguments as in his prior motions and objections.

¶ 9 Additionally, on July 25, 2013, defendant filed a *pro se* "Motion to Dismiss Instanter," seeking to dismiss the case in its entirety under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2012)). Defendant claimed that the claim was barred by *res judicata*, that the claim was time-barred, and fraudulent misrepresentation based on his claim that plaintiff was not the legal holder of the mortgage and note.

¶ 10 On August 2, 2013, defendant filed another *pro se* motion for sanctions.

¶ 11 On September 30, 2013, the parties appeared before the trial court on plaintiff's motion to amend the complaint, and the trial court granted plaintiff leave to file a supplemental memorandum on the issue, which it did on November 7, 2013; in connection with that supplemental memorandum, plaintiff also filed a "Motion to Substitute as Plaintiff Real Party in Interest," which it requested be granted if its motion to amend the complaint was denied.

¶ 12 On December 3, 2013, defendant filed a *pro se* "Motion to Request a Ruling on Defendants [*sic*] Motion to Dismiss Instanter."

¶ 13 On April 10, 2014, the trial court entered an order concerning (1) "Plaintiff's Motion to Amend Complaint to Foreclose Mortgage," (2) "Plaintiff's Motion to Substitute as Plaintiff Real Party in Interest," (3) "Defendants [*sic*] Motion for Sanctions Instanter," (4) "Defendants' Motion in Objection to Plaintiff's Motion for Default and Motion for Substitution of Plaintiff," (5) "Defendants [*sic*] Motion to Dismiss Instanter," and (6) defendant's "Motion to Request a Decision on Defendants [*sic*] Motion to Dismiss Instanter." The court granted plaintiff's motion to amend the complaint, denied defendant's motion for sanctions, and struck all remaining motions as moot due to the court's ruling on the motion to amend.

¶ 14 On April 30, 2014, defendant filed a *pro se* motion for reconsideration, arguing that plaintiff lacked standing.

¶ 15 On May 22, 2014, plaintiff filed an amended complaint for foreclosure and for breach of the note, alleging that it filed the case as assignee of MERS, who was the mortgagee solely as nominee for plaintiff. The complaint alleged that defendant was in default for failure to make the payments owed under the note from June 1, 2008, to the present, as well as for transferring title to the property to the David Cocroft Living Trust without plaintiff's prior written consent.

---

[3]The amendment would also add another defendant—a subordinate lienholder—which is not at issue on appeal.

- 3 -

The complaint alleged that, as of May 15, 2014, there was due and owing $922,589.14, plus attorney fees and costs. The complaint alleged that the capacity in which plaintiff filed suit was "[a]s legal holder of the indebtedness and holder of the Mortgage which was pledged as security therefore." As relevant to the instant appeal, the complaint further alleged that a grace period notice was sent to defendant on February 24, 2012.

¶ 16    Attached to the amended complaint was an assignment of mortgage for the mortgage recorded as document No. 0726911063, which provided that MERS, as nominee for plaintiff, assigned to plaintiff "all interests in and under that certain Mortgage dated 6/26/2007 and executed by" defendant and MERS, as nominee for plaintiff, "together with note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Mortgage." The assignment was dated November 14, 2008, and was executed by Erla Carter-Shaw on behalf of MERS.

¶ 17    Also attached to the complaint was a copy of a mortgage dated June 26, 2007, and recorded as document No. 0726911063, which named defendant as the borrower and listed MERS as the mortgagee acting solely as nominee for plaintiff, which was named as the lender. Additionally, a copy of the June 26, 2007, note provided that defendant promised to pay plaintiff $572,000. The note was executed by defendant and also contained three endorsements. One provided: "Without recourse, pay to the order of IndyMac Bank, F.S.B. By: Taylor, Bean & Whitaker Mortgage Corp." and was signed by Erla Carter-Shaw. Another provided: "Pay To the Order Of Taylor, Bean & Whitaker Mortgage Corp. Without Recourse IndyMac Bank, F.S.B." and was signed by Brian[4] Brouillard. A third was a blank endorsement providing: "Without recourse, pay to the order of [space] By: Taylor, Bean & Whitaker Mortgage Corp." and was signed by Erla Carter-Shaw.

¶ 18    Also attached to the complaint was a document dated February 24, 2012, and addressed to defendant from RoundPoint Mortgage Servicing Corporation (RoundPoint). The document was entitled "Grace Period Notice" and provided, in all caps:

"Your loan is more than 30 days past due. You may be experiencing financial difficulty. It may be in your best interest to seek approved housing counseling. You have a grace period of 30 days from the date of this notice to obtain approved housing counseling. During the grace period, the law prohibits us from taking any legal action against you. You may be entitled to an additional 30 day grace period if you obtain housing counseling from an approved housing counseling agency. A list of approved counseling agencies may be obtained from the Illinois Department of Financial and Professional Regulation."

The document was accompanied by a copy of an envelope addressed to defendant, with first-class postage paid.

¶ 19    On October 1, 2014, defendant's motion for reconsideration was denied, and on October 27, 2014, defendant filed a *pro se* motion to dismiss the complaint pursuant to section 2-619 of the Code, again alleging a lack of standing. Attached to defendant's motion to dismiss was a copy of a second assignment, dated February 13, 2011, in which MERS as nominee for plaintiff assigned the same mortgage loan to plaintiff; the assignment was signed by Melissa Long on behalf of MERS.

---

[4]This first name is difficult to read on the copy contained in the record on appeal but appears to be "Brian."

- 4 -

¶ 20 Also on October 27, 2014, defendant filed a *pro se* "Objection and Motion to Strike the Note Attached to Amended Complaint for Mortgage Foreclosure and Other Relief," in which defendant claimed that the note attached to the amended complaint was "fraudulent" because it was different from the note attached to the original complaint—the note attached to the original complaint bore one blank endorsement, while the note attached to the amended complaint bore three endorsements.

¶ 21 On November 18, 2014, the trial court denied defendant's motions, and on December 18, 2014, defendant filed a *pro se* verified answer, affirmative defenses, and counterclaim. Defendant raised 10 affirmative defenses: (1) *res judicata*; (2) failure to comply with Illinois Supreme Court Rule 113(b) (eff. May 1, 2013), which required a copy of the note to be attached to the complaint; (3) failure to comply with a condition precedent to the foreclosure proceedings, namely, failure to provide a notice of default and acceleration of the loan; (4) lack of standing at the time the case was commenced; (5) failure to refile the complaint within one year after the voluntary dismissal of the prior foreclosure case, making the complaint time-barred; (6) "Lack of Standing to Maintain Case," based on the allegation that plaintiff was not the holder of the note; (7) lack of authority to bring or maintain the foreclosure action; (8) lack of subject-matter jurisdiction, based on the allegations concerning the claims being time-barred or barred by *res judicata*; (9) forgery, based on allegations that the signature of Erla Carter-Shaw did not appear to be the same in all documents signed by her; and (10) satisfaction of the loan. Defendant also alleged four counterclaims: (1) violation of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2012)) for failure to make the proper disclosures to defendant at the time of the loan, including Truth in Lending disclosures; (2) using a false appraisal in determining the property's value, misleading defendant about the value of the property; (3) breach of the note and mortgage, for failure to provide defendant a notice of default and acceleration; and (4) slander of title.

¶ 22 On December 30, 2014, defendant filed a *pro se* motion for leave to file an amended answer, affirmative defenses, and counterclaim, and on January 8, 2015, the trial court entered an order, *inter alia*, (1) granting defendant's motion in part and allowing him to file an amended answer and affirmative defenses and (2) striking defendant's counterclaims for filing them without leave of court. The order also provided that "the court finds that plaintiff has presented the original note in open court over defendants' oral objection that the note is forged."

¶ 23 On January 13, 2015, defendant filed a *pro se* amended verified answer and affirmative defenses in which he raised 13 affirmative defenses. Nine of the affirmative defenses were the same as in his original answer and affirmative defenses, with only the affirmative defense of "lack of authority to bring or maintain the foreclosure action" omitted. Additionally, defendant raised four additional affirmative defenses: two based on fraud, one for rescission based on plaintiff's failure to make accurate Truth in Lending disclosures, and one based on release of the loan.

¶ 24 On February 6, 2015, defendant filed another *pro se* motion for leave to file an amended answer and affirmative defenses, requesting to correct certain errors and to add a counterclaim.

¶ 25 On April 17, 2015, plaintiff filed a motion for summary judgment, arguing that plaintiff had standing to bring the action as a matter of law, that the facts surrounding defendant's default were uncontested, and that each of defendant's affirmative defenses failed to raise any issue of material fact or failed as a matter of law.

¶ 26     With respect to the affirmative defenses of *res judicata*, time-barred claims, and lack of subject-matter jurisdiction, all of which were based on the prior voluntary dismissal of a previous foreclosure case, plaintiff argued that the prior dismissal was without prejudice and did not constitute an adjudication on the merits. Plaintiff further argued that the statute of limitations on a mortgage foreclosure was 10 years and that its refiled complaint was filed well within the 10-year period. With respect to the affirmative defense concerning Illinois Supreme Court Rule 113 (eff. May 1, 2013), plaintiff pointed out that the rule became effective in 2013 and that the initial complaint was filed in 2012; plaintiff further argued that, by attaching a copy of the note to the amended complaint, it complied with the rule's requirements. With respect to the affirmative defenses concerning lack of a notice of default, plaintiff argued that defendant received such a notice and the fact that the servicer used a different tracking number did not invalidate the notice. With respect to the affirmative defenses concerning standing, plaintiff argued that it was the holder of the original note, which it presented in open court, and that it had demonstrated its standing. With respect to the affirmative defense concerning forgery, plaintiff argued that such an allegation was entirely unsupported. With respect to the affirmative defense that the loan had been paid off, plaintiff argued that defendant presented only unverified documents and had provided no evidence that he had actually paid any money to pay off the loan at any time. With respect to the affirmative defenses concerning rescission and release of the mortgage, which were based on defendant's allegations concerning Truth in Lending disclosures, plaintiff argued that it did not violate Truth in Lending requirements and that defendant's purported exercise of any rescission rights was fraudulent. Finally, with respect to the affirmative defense concerning fraud, plaintiff argued that the servicer merely referenced the loan under a different identification number and did not change the loan.

¶ 27     Attached to the motion for summary judgment was the affidavit of Dawn Kernicky, a vice president of default servicing for RoundPoint, which acted as plaintiff's servicer with respect to the loan at issue. Kernicky averred that a true and correct copy of the note was attached to the amended complaint, and that on August 7, 2007, the note was indorsed and shipped to IndyMac Bank, F.S.B. (IndyMac), as part of a potential loan sale that did not close; on September 6, 2007, the note was indorsed and returned to plaintiff by IndyMac. Kernicky further averred that the mortgage was assigned to plaintiff by MERS on November 14, 2008, pursuant to an assignment, which was attached to the amended complaint; the assignment was prepared and recorded as part of plaintiff's then-pending foreclosure proceeding against defendant, which was filed on October 30, 2008, and was later voluntarily dismissed on October 15, 2009. Kernicky averred that a second assignment was prepared and recorded on March 15, 2011, in connection with plaintiff's contemporaneous recording of an assignment of mortgage related to a second mortgage with defendant that was not the subject of the instant action.

¶ 28     Kernicky averred that on information and belief, prior to August 2009, plaintiff and Colonial Bank "had an ongoing banking relationship where by Colonial Bank served as [plaintiff's] primary lender, providing a number of funding facilities to [plaintiff] for its origination and servicing of mortgage loans. For these loans, the original collateral files were held by Colonial Bank as collateral for repayment of [plaintiff's] obligations to Colonial Bank." Kernicky further averred that, based on her personal knowledge and review of public records, on August 14, 2009, Colonial Bank was closed and placed into receivership by the Federal Deposit Insurance Corporation (FDIC), and the FDIC was appointed as receiver for

Colonial Bank's assets. The FDIC caused the servicing of all of plaintiff's loans that were held by Colonial Bank to be transferred from plaintiff to RoundPoint. On August 24, 2009, plaintiff filed a Chapter 11 petition in bankruptcy court in Florida. Following the bankruptcy filing, "a dispute arose between the FDIC on the one hand and [plaintiff's] bankruptcy estate on the other hand as to the ownership of the loans being serviced by RoundPoint." This dispute was ultimately resolved via a settlement agreement dated August 11, 2010, by which the parties confirmed that certain loans, including the loan at issue in the instant case, were owned by plaintiff and not Colonial Bank. The settlement agreement was approved by the bankruptcy court on September 2, 2010. On October 8, 2010, RoundPoint informed defendant of the settlement pursuant to a "Notice of Transfer of Ownership of Mortgage Loan," which was attached to the affidavit. Kernicky averred that, "[c]onsistent with the terms of the Settlement Agreement, the Notice of Transfer provided to [defendant], and orders entered in the Bankruptcy Case, [plaintiff] owns the Loan, and RoundPoint services the Loan on [plaintiff's] behalf."

¶ 29    Kernicky averred that plaintiff was the current owner of the note, mortgage, and rider at issue in the foreclosure action and that, based on her review of the loan records, "[plaintiff] has never released its Mortgage, received full satisfaction for the amounts due under the Note or authorized any transfer of the Property by the Borrower." Kernicky further averred that defendant was in default under the note for failure to make the required payments from June 1, 2008, to the present and was also in default under the mortgage for transferring title to the property to the David Cocroft Living Trust without prior written consent from plaintiff; Kernicky averred that on February 24, 2012, RoundPoint sent defendant a notice of default and intent to accelerate, which was attached to the amended complaint. Kernicky also averred that "[o]n or about February 24, 2012, RoundPoint also sent [defendant and his wife] a Grace Period Notice," a true and correct copy of which was attached to the amended complaint. Finally, Kernicky averred that "RoundPoint tracks [defendant's] Loan under Identification No. ending in 3652, while [plaintiff] tracked [defendant's] Loan under Loan No. ending in 6401. Both RoundPoint and [plaintiff's] transaction histories pertain to the Loan and Loan Documents."

¶ 30    Also attached to the motion was a "loss mitigation affidavit" of Paul Hooton, an assistant vice president of loss mitigation with RoundPoint, which set forth loss mitigation efforts undertaken by RoundPoint. In relevant part, Hooton averred that "[a] Grace Period Notice and a Notice of Default and Intent to Accelerate ('Default Notice') was also sent to the Borrower on or about February 24, 2012," and copies of the notice and envelope were attached to the affidavit.

¶ 31    On August 3, 2015, the trial court entered an order entering and continuing plaintiff's motion for summary judgment to October 26, 2015; the same order provided that defendant's motion to amend his amended verified answer and affirmative defenses was withdrawn.

¶ 32    On August 10, 2015, counsel entered an appearance on behalf of defendant and his wife, and on August 26, 2015, counsel filed a motion for extension of time to file a motion for leave to file a third amended answer, affirmative defenses, and counterclaims. On October 13, 2015, the trial court entered an order granting the motion for extension of time and, on October 30, 2015, the trial court entered an order granting the motion for leave to file "as to the third amended answer, third amended affirmative defense no. 2 & counterclaim no. 2. All other claims & defenses are stricken."

¶ 33    On November 6, 2015, defendant and his wife filed a "Third Amended Answer, Third Amended Affirmative Defense II and Counterclaim II." "Affirmative Defense II" was for rescission and alleged that defendant rescinded the loan. Count II of the counterclaim was for violation of the Truth in Lending Act (15 U.S.C. § 1601 *et seq.* (2006)) and failure to honor defendant's rescission notice.

¶ 34    On December 11, 2015, plaintiff filed a motion to dismiss the third amended affirmative defenses and counterclaim pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2014)), arguing that defendant's Truth in Lending Act claims must be dismissed because rescission under the statute did not apply to a purchase of a single family home occupied as a principal residence and, even if it did, such a claim was time-barred. Additionally, plaintiff argued that defendant failed to sufficiently allege a claim for rescission because his supporting evidence was unauthenticated and the same arguments had previously been rejected in other foreclosure proceedings.

¶ 35    On February 17, 2016, in its response to plaintiff's motion to dismiss the third amended affirmative defense and counterclaim, defendant conceded that "it appears the loan in question is a purchase money mortgage loan for the initial acquisition of real estate, in which the right of rescission does not apply under the Truth in Lending Act. Therefore, [defendant and his wife] seek to withdraw their third amended defense II and third amended counterclaim II."

¶ 36    On April 4, 2016, plaintiff filed a supplemental affidavit of Kernicky in support of its motion for summary judgment, in which she averred that since the filing of her initial affidavit, plaintiff had incurred additional costs in connection with the loan and that through March 9, 2016, the total amount due to plaintiff totaled $1,008,549.69.

¶ 37    On April 13, 2016, the trial court entered an order granting plaintiff's motion to dismiss and dismissing defendant's third amended affirmative defense and counterclaim.

¶ 38    On May 4, 2016, defendant filed a response to plaintiff's motion for summary judgment, arguing that the motion should be denied "because Plaintiff 1) request[s] unsubstantiated and unreasonable fees; and 2) failed to abide by required condition precedents. In addition, the Motion should be denied due to Plaintiff's lack of standing." With respect to conditions precedent, defendant argued that no notice of acceleration was provided, nor was a grace period notice or notice of counseling.

¶ 39    On June 2, 2016, the trial court granted summary judgment in plaintiff's favor and denied defendant's request that it reconsider its prior orders. The court entered a judgment of foreclosure and sale on the same day in the amount of $1,152,183.85. The property was sold at a sheriff's sale on December 21, 2016, and plaintiff was the successful bidder at $290,000. On January 11, 2017, plaintiff filed a motion for confirmation of the sale, and on March 2, 2017, the trial court entered an order confirming the sale and entering an *in personam* deficiency judgment in the amount of $907,396.09 against defendant.

¶ 40    On April 3, 2017, defendant filed a *pro se* notice of appeal, appealing the following orders: October 1, 2014; January 8, 2015; June 23, 2015;[5] April 13, 2016; June 2, 2016; and March 2, 2017.

---

[5]The record does not reflect a court order entered on June 23, 2015.

ANALYSIS

¶ 42      On this *pro se* appeal, defendant raises a number of arguments, arguing (1) the trial court erred in permitting plaintiff to amend its complaint to substitute plaintiff as a party instead of the originally-named plaintiff, (2) the trial court erred in denying defendant's motion to strike the note attached to the amended complaint, (3) the trial court erred in granting plaintiff's motion for summary judgment despite defendant's allegation that he had not received the required grace period notice and his arguments that plaintiff was not the holder of the note, and (4) the trial court erred in confirming the sale because justice was not done.

## I. Amendment of Complaint

¶ 44      We first consider defendant's argument that the trial court should not have permitted amendment of the complaint to replace plaintiff as the named plaintiff in the case instead of Colonial Bank. As an initial matter, we note that defendant attempts to draw a distinction between a misnomer and a mistaken identity and argues that the instant case was one of mistaken identity. While this distinction may be relevant in certain cases, namely, where the statute of limitations comes into play, it is not relevant in the instant case, as both the original and amended complaint were filed well within the statute of limitations period. See *Fassero v. Turigliatto*, 349 Ill. App. 3d 368, 370 (2004) (the relation-back doctrine applies where there is a misnomer but only applies in cases of mistaken identity under certain circumstances). Accordingly, the label placed on the error is irrelevant to our analysis of whether the trial court properly granted leave to file an amended complaint naming plaintiff as the party plaintiff.

¶ 45      Amendments to pleadings are governed by section 2-616 of the Code, which provides, in relevant part:

> "At any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff or defendant, dismissing any party, changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either or form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim." 735 ILCS 5/2-616(a) (West 2012).

¶ 46      The trial court has broad discretion in deciding a motion to amend pleadings prior to the entry of final judgment. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). Accordingly, we will not reverse such a decision absent an abuse of that discretion. *McDonald v. Lipov*, 2014 IL App (2d) 130401, ¶ 47. In order to determine whether the trial court abused its discretion, we apply the four factors set forth by our supreme court in *Loyola Academy*: "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleadings could be identified."[6] *Loyola Academy*, 146 Ill. 2d at

---

[6] We note that defendant claims that the trial court did not apply any of these factors prior to permitting amendment of the complaint. However, there is nothing in the record to support such an assertion and defendant did not include a report of proceedings or bystander's report of the hearing on the motion. In the absence of a showing of error, we will presume that the trial court's actions were in conformity with the law and had a sufficient factual basis. See *Foutch v. O'Bryant*, 99 Ill. 2d 389,

273. "However, the primary consideration is whether amendment would further the ends of justice." *Regas v. Associated Radiologists, Ltd.*, 230 Ill. App. 3d 959, 968 (1992); see also *Cantrell v. Wendling*, 249 Ill. App. 3d 1093, 1095 (1993) ("The most important question is whether amendment will be in furtherance of justice, and amendment of defective pleadings should be permitted unless it is clear that the defect cannot be cured thereby. Any doubts should be resolved in favor of allowing amendments.").

¶ 47    In the case at bar, we cannot find that the trial court abused its discretion in permitting amendment of the complaint. With respect to the first factor, the proposed amendment would cure any defects in the original complaint by substituting the correct plaintiff and, as explained below, defendant's arguments as to any remaining defects are meritless. With respect to the second factor, we cannot find any prejudice or surprise to defendant, as the first motion for leave to amend was filed on December 18, 2012, prior to defendant's appearance on January 14, 2013, and at the time of his appearance, defendant immediately filed an objection to the motion for leave to amend the complaint. With respect to the third factor, the proposed amendment was timely—as noted, the motion for leave to amend the complaint was filed at the beginning stages of the case, prior to even the entry of defendant's appearance. Finally, with respect to the fourth factor, there were no prior opportunities to amend, given the early stage of the proceedings. We note that defendant argues that he was prejudiced by the amendment, "because he had already filed motions arguing Colonial did not have standing" and because the amendment would alter the nature of the proof required to defend. However, as noted, the record shows that the first motion to amend the complaint was filed prior to defendant even appearing in the case. While plaintiff subsequently filed another motion for leave to amend the complaint at a later time, on May 1, 2013, even that motion was filed during the pleading stages. See *Loyola Academy*, 146 Ill. 2d at 275 (in finding no prejudice or surprise, noting that "[m]ore importantly, plaintiff gave notice of its intention while this cause was still in the pleading stage. This cause was not near any established trial date"). We thus cannot find that granting leave to amend the complaint was an abuse of discretion.

¶ 48    Defendant also argues that leave to file the amended complaint should have been denied based on *res judicata*, lack of standing, and rescission. In seeking to amend a complaint, "[t]he plaintiff must meet all four *Loyola Academy* factors [citation], and if the proposed amendment does not state a cognizable claim, and thus, fails the first factor, courts of review will often not proceed with further analysis." *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 7 (2004). "It is not necessary for the parties to go through the process of filing an amended pleading and then testing its sufficiency by a motion to dismiss—when ruling on a motion to amend, the court may consider the ultimate efficacy of a claim as stated in a proposed amended pleading." *Hayes Mechanical*, 351 Ill. App. 3d at 7. In the case at bar, however, none of defendant's arguments provide any basis for denying leave to amend.

¶ 49    First, defendant claims that the foreclosure complaint was barred by *res judicata*. " 'The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on

391-92 (1984) (an appellant has the burden of presenting a sufficiently complete record of the proceedings at trial to support a claim of error and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with the law and had a sufficient factual basis).

the same cause of action.' " *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008) (quoting *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996)). *Res judicata* bars relitigation of matters that were actually decided in the first lawsuit, as well as matters that could have been decided in that suit. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). Three requirements must be satisfied for *res judicata* to apply: (1) a final judgment on the merits has been reached by a court of competent jurisdiction, (2) an identity of cause of action exists, and (3) the parties or their privies are identical in both actions. *Hudson*, 228 Ill. 2d at 467 (citing *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70, 73-74 (1994)).

¶ 50        In the case at bar, defendant cannot establish the first requirement, namely, the presence of a final judgment on the merits. "The requirement of a final order or judgment is a 'critical' component in showing the applicability of *res judicata*." *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 22 (quoting *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 41). "A judgment cannot bar a subsequent action unless it is a 'final' judgment." *Richter*, 2016 IL 119518, ¶ 22. Our supreme court has held that "[t]o be 'final,' a judgment or order must terminate the litigation and fix absolutely the parties' rights, leaving only enforcement of the judgment." *Richter*, 2016 IL 119518, ¶ 24.

¶ 51        Here, defendant's claim of *res judicata* is based on a prior foreclosure complaint filed by plaintiff against defendant that was based on the same loan, which was voluntarily dismissed without prejudice on October 15, 2009. However, "a dismissal 'without prejudice' signals that there was no final decision on the merits and that the plaintiff is not barred from refiling the action." *Richter*, 2016 IL 119518, ¶ 24. Thus, in the instant case, as there was no final decision on the merits, there can be no *res judicata* bar to plaintiff's foreclosure complaint.

¶ 52        The cases cited by defendant do not lead to a different result as they concern situations in which claim-splitting is an issue. Our supreme court has cautioned that the statutes giving a plaintiff the right to voluntarily dismiss a complaint and refile it "[do] not automatically immunize plaintiffs against *res judicata* or any other legitimate defenses that a defendant might assert." *Hudson*, 228 Ill. 2d at 473 (citing *Rein*, 172 Ill. 2d at 342-43). Thus, "a plaintiff who splits his claims by voluntarily dismissing and refiling part of an action after a final judgment has been entered on another part of the case subjects himself to a *res judicata* defense." *Hudson*, 228 Ill. 2d at 473. That is not the issue in the case at bar, however, as the entirety of plaintiff's earlier complaint was voluntarily dismissed and no part of it resulted in a final judgment. See *Richter*, 2016 IL 119518, ¶ 40 (distinguishing *Rein* and *Hudson* in a case where the trial court never entered a final order because "[w]ithout a final adjudication on the merits, the claim-splitting issues addressed in *Rein* and *Hudson* are not presented here, and *res judicata* is not applicable").

¶ 53        We are also unpersuaded by defendant's argument that the voluntary dismissal order became a final judgment on the merits because plaintiff did not refile the complaint within one year of the October 15, 2009, dismissal. "If a plaintiff voluntarily dismisses his or her case pursuant to section 2-1009 of the Code (735 ILCS 5/2-1009 (West 2010)) ***, section 13-217 of the Code permits a plaintiff to refile the action within one year or within the remainder of the statute of limitations, whichever is greater." *BankFinancial, FSB v. Tandon*, 2013 IL App (1st) 113152, ¶ 22 (citing 735 ILCS 5/13-217 (West 2010)). The statute of limitations for a mortgage foreclosure case is 10 years (735 ILCS 5/13-206 (West 2012)), and the date of default alleged in the complaint was June 1, 2008. Therefore, plaintiff had until June 1, 2018, to refile its complaint, which it did on September 10, 2012, well within the remaining

limitations period. Accordingly, *res judicata* does not provide a basis for denying the amendment of the complaint.

¶ 54 Second, defendant claims that he rescinded the loan due to plaintiff's failure to comply with the Truth in Lending Act (Act). However, the Act's right of rescission expressly does not apply to "a residential mortgage transaction" (15 U.S.C. § 1635(e)(1) (2012)), which is defined as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling" (15 U.S.C. § 1602(x) (2012)). There is no dispute that defendant's mortgage loan was made to finance the acquisition of his dwelling. Accordingly, under the Act's express language, the right of rescission does not apply. Defendant acknowledges this but claims that "a recent appellate decision supported Defendants argument that Plaintiff violated the Truth in Lending Act *** by failing to respond to his valid rescission of the alleged subject loan that were [*sic*] mailed on May 19, 2009." However, defendant does not identify this purported case or cite to it. Accordingly, we find his argument unpersuasive and cannot find that his rescission claim was a valid basis for denying amendment of the complaint.

¶ 55 Finally, defendant argues that the trial court should not have permitted amendment of the complaint because plaintiff lacked standing. However, defendant's arguments in his brief concerning this issue relate only to the standing of Colonial Bank, the previous plaintiff, and not plaintiff, the named party after amendment of the complaint. Since amendment was based on removing Colonial Bank as plaintiff and substituting plaintiff, any arguments as to Colonial Bank's lack of standing are irrelevant to the propriety of the amended complaint and do not serve as a basis for denying amendment. Accordingly, we cannot find that the trial court abused its discretion in permitting amendment of the complaint.

¶ 56                                    II. Motion to Strike Note

¶ 57 Defendant next argues that the trial court erred in denying his motion to strike the note that was attached to the amended complaint. Defendant claims that because the note attached to the original complaint bore one blank endorsement, while the note attached to the amended complaint bore three endorsements, the additional endorsements "were a forgery." However, defendant provides no support for this argument, other than his claim that IndyMac was closed on July 11, 2008, and sold on March 18, 2009. Defendant claims that plaintiff "gave no explanation for the endorsements when the trial court granted the motion to amend the complaint and denied Defendant's Motion to Strike." Again, however, there is no report of proceedings or bystander's report from this hearing, so we are unable to determine what occurred at that hearing. "Without an adequate report of the proceedings showing the basis for the trial court's ruling on the motion to strike, we must presume that its decision was appropriate." *Ritacca Laser Center v. Brydges*, 2018 IL App (2d) 160989, ¶ 24 (citing *Foutch*, 99 Ill. 2d at 391-92). We additionally note that, at a later date, the trial court found that "plaintiff has presented the original note in open court over defendants' oral objection that the note is forged" and that, in connection with its motion for summary judgment, plaintiff explained that the endorsements were the result of a 2007 potential loan sale that did not close. Accordingly, there is no support for defendant's contention that the endorsements on the note were forgeries, and the trial court did not err in denying his motion to strike the note.

¶ 58

¶ 59        Next, defendant claims that the trial court erred in granting summary judgment because there were genuine issues of fact as to whether defendant was sent a grace period notice and whether plaintiff was the holder of the note.[7] A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). The trial court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a trial court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 60        "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102. However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 61        In the case at bar, we cannot find that defendant has identified questions of fact concerning either the grace period notice or plaintiff's status as the holder of the note. With respect to the grace period notice, defendant argues that there is no evidence that plaintiff sent the grace period notice required by section 15-1502.5 of the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1502.5 (West 2014)). Section 15-1502.5 of the Foreclosure Law became effective on April 6, 2009, and required, in relevant part, for a grace period notice to be sent before any foreclosure action could be instituted. *Bank of America, N.A. v. Adeyiga*, 2014 IL App (1st) 131252, ¶¶ 87-88; see also 735 ILCS 5/15-1502.5(c) (West 2014) ("No foreclosure action *** shall be instituted on a mortgage secured by residential real estate before mailing the notice described in thus subsection (c)."). However, section 15-1502.5 was repealed by its own terms on July 1, 2016. 735 ILCS 5/15-1502.5(k) (West 2014). At least one court has held that this express repeal provides a homeowner "no recourse" after the date of the repeal, even if a judgment has been entered and the cause is pending on appeal. *U.S. Bank, N.A.*

_____

[7]Defendant also makes an argument concerning the validity of the endorsements on the note. However, we have addressed this argument in the context of his earlier motion to strike and have no need to repeat that argument with respect to the motion for summary judgment, which provided even more support for the validity of the note.

*v. Coe*, 2017 IL App (1st) 161910, ¶ 19; see also *Coe*, 2017 IL App (1st) 161910, ¶ 13 (finding that section 15-1502.5 was a special remedial statute without a savings clause and "it follows that, '[t]he unconditional repeal of a special remedial statute without a saving clause stops all pending actions where the repeal finds them. If final relief has not been granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal.' " (quoting *People ex rel. Eitel v. Lindheimer*, 371 Ill. 367, 373-74 (1939))).

¶ 62    More importantly, however, there is evidence contained in the record that the grace period notice was mailed to defendant. Attached to the amended complaint was a document dated February 24, 2012, and addressed to defendant from RoundPoint, plaintiff's servicer. The document was entitled "Grace Period Notice" and provided the required language set forth in section 15-1502.5. The exhibit attached to the complaint also included a copy of an envelope addressed to defendant and bearing first-class postage. Additionally, the affidavit of Kernicky, a vice president of default servicing for RoundPoint, was attached to the motion for summary judgment, in which Kernicky averred that "[o]n or about February 24, 2012, RoundPoint also sent [defendant and his wife] a Grace Period Notice." Finally, in the "loss mitigation affidavit" of Hooton, an assistant vice president of loss mitigation with RoundPoint, Hooton averred that "[a] Grace Period Notice and a Notice of Default and Intent to Accelerate ('Default Notice') was also sent to the Borrower on or about February 24, 2012." Defendant claims that RoundPoint did not begin servicing the loan until July 30, 2012, after the date of the notice, but Kernicky averred in her affidavit that RoundPoint began servicing the loan in 2009 and was doing so on behalf of plaintiff no later than September 2, 2010, when the bankruptcy court approved a settlement agreement confirming that plaintiff, not Colonial Bank, was the owner of the loan. Defendant also claims that there is no evidence that the notice was mailed or how long plaintiff waited before filing suit, but again, this assertion is contradicted by the evidence—the letter itself was dated February 24, 2012, and Kernicky averred that the letter was sent on that date. Accordingly, there is evidence in the record that the grace period notice was mailed to defendant.

¶ 63    By contrast, there is no evidence in the record to support defendant's assertion that the grace period notice was not mailed or that defendant did not receive it. Defendant did not submit a counteraffidavit in response to plaintiff's motion for summary judgment. Additionally, defendant's third amended answer was not verified.[8] Accordingly, there is

---

[8]We note that, if a pleading is verified, "every subsequent pleading must also be verified, unless verification is excused by the court." 735 ILCS 5/2-605(a) (West 2014). However, in the case at bar, the complaint was not verified and defendant voluntarily chose to verify his *pro se* answers. "[A]s a general rule, where a pleading requires no verification, an amendment of that pleading need not be verified." *People ex rel. Hartigan v. All American Aluminum & Construction Co.*, 171 Ill. App. 3d 27, 37 (1988). Thus, defendant was permitted to file a subsequent answer through counsel that was not verified. See *Hartigan*, 171 Ill. App. 3d at 37 (finding no violation of section 2-605(a) where the third amended complaint was not verified even though the two prior complaints had been verified). Nevertheless, any admissions made by defendant in those verified pleadings would remain binding after amendment because there was no allegation that those admissions were made through mistake or inadvertence. See *Knauerhaze v. Nelson*, 361 Ill. App. 3d 538, 558 (2005) ("[O]riginal *verified* pleadings will remain binding as judicial admissions even after the filing of an amended pleading which supersedes the original unless the amended pleading discloses that the original pleading was made through mistake or

evidence in the record in support of plaintiff's assertion that it had properly mailed the grace period notice, and there is no evidence in the record to counter that claim.

¶ 64  We are not persuaded by defendant's attempt to draw an analogy between his case and the facts present in *Adeyiga*, a case in which we remanded for an evidentiary hearing on the issue of grace period notice, as the two situations are sharply distinguishable. There, the bank did not allege in its complaint that it had mailed a grace period notice. *Adeyiga*, 2014 IL App (1st) 131252, ¶ 11. In response to the bank's motion for summary judgment, the borrowers filed affidavits in which they averred that they did not receive a grace period notice. *Adeyiga*, 2014 IL App (1st) 131252, ¶ 26. In its reply, the bank "did not deny that it failed to send the grace period notice. The Bank argued that since [one of the borrowers] did not raise a defense with regard to failure to send a grace period notice in his answer, and [the other borrower] filed no answer, they had admitted to receiving the grace period notice." *Adeyiga*, 2014 IL App (1st) 131252, ¶ 31. The trial court agreed, finding that the borrowers had admitted that the grace period notice was sent "because [one borrower] did not address the grace period notice in his answer, and [the other] made no answer at all." *Adeyiga*, 2014 IL App (1st) 131252, ¶ 36. On appeal, we reversed and remanded the case for an evidentiary hearing on the issue of grace period notice. In our analysis, we repeatedly noted that (1) the borrowers had filed affidavits denying receipt of a grace period notice, (2) the bank did not contend that notice was mailed, and (3) the only basis for finding such a notice was the *pro se* answer "in which [the borrower] supposedly admitted an unstated allegation by failing to deny it." *Adeyiga*, 2014 IL App (1st) 131252, ¶ 107. We found that "the trial court erred as a matter of law when it deemed that [the borrowers] admitted to receiving the grace period notice, even though the Bank never showed evidence that it mailed or served a notice, and thus we remand to the trial court to determine in an evidentiary hearing whether the grace period notice was sent, and whether the Bank waited past 30 days before they filed suit." *Adeyiga*, 2014 IL App (1st) 131252, ¶ 112.

¶ 65  In the case at bar, by contrast, plaintiff alleged in its complaint that it had provided the required grace period notice and attached a copy of the notice and the envelope to its complaint. In support of its motion for summary judgment, plaintiff also included two affidavits in which the affiants averred that the grace period notice had been mailed well before filing of the complaint. In response, defendant did not provide any counteraffidavit denying receipt of the grace period notice. Thus, this case is effectively the opposite of the situation present in *Adeyiga*—instead of the plaintiff being silent and the borrower averring no notice, here, the borrower is silent and the plaintiff has averred providing the notice and has attached a copy of the notice to the complaint. Accordingly, we cannot find that there is a question of material fact on this issue.

¶ 66  We also cannot find a question of material fact as to the issue of whether plaintiff was the holder of the note at the time the complaint was filed. Defendant argues that since plaintiff had filed for bankruptcy in 2011, it was the plan trust that would have standing to initiate a foreclosure action, not plaintiff. However, defendant provides no support for his assertion, citing a Chapter 11 liquidation plan that only generally speaks of vesting plaintiff's assets in the plan trust. Defendant does not address Kernicky's affidavit, in which she averred that, in connection with the bankruptcy action, the bankruptcy court approved a settlement agreement

---

inadvertence." (Emphasis in original.)). With respect to the issue of grace period notice, defendant made no admissions in his verified answers and only made a general denial of plaintiff's allegation.

confirming plaintiff's ownership in the loan. Furthermore, defendant does not address the fact that plaintiff attached the mortgage and promissory note to the amended complaint and even produced the original note in open court, as the trial court found in a January 8, 2015, order. See *Adeyiga*, 2014 IL App (1st) 131252, ¶ 67 ("To establish a *prima facie* case of foreclosure in accordance with section 15-1504, a plaintiff is required to introduce evidence of the mortgage and promissory note, at which time the burden of proof shifts to the defendant to prove any affirmative defenses."). Accordingly, we cannot find that defendant has identified a question of material fact concerning plaintiff's standing and affirm the trial court's grant of summary judgment in plaintiff's favor.

¶ 67                                    IV. Confirmation of Sale

¶ 68    Finally, defendant argues that the trial court erred in confirming the sale because "Justice was Not Done." Under section 15-1508 of the Foreclosure Law, after a hearing on a motion to confirm a sale, "[u]nless the court finds that (i) a notice required in accordance with subsection (c) of Section 15-1507 was not given, (ii) the terms of sale were unconscionable, (iii) the sale was conducted fraudulently, or (iv) justice was otherwise not done, the court shall then enter an order confirming the sale." 735 ILCS 5/15-1508(b) (West 2014). "The provisions of section 15-1508 have been construed as conferring on circuit courts broad discretion in approving or disapproving judicial sales." *Household Bank, FSB v. Lewis*, 229 Ill. 2d 173, 178 (2008). Accordingly, "[a] court's decision to confirm or reject a judicial sale under the statute will not be disturbed absent an abuse of that discretion." *Lewis*, 229 Ill. 2d at 178.

¶ 69    In the case at bar, defendant argues that justice was not done because plaintiff's purchase of the property was "deceptive and fraudulent" because plaintiff had been "liquidated and dissolved" at the time of the sale. However, Kernicky's affidavit explained that plaintiff's Chapter 11 reorganization did not result in the termination of its corporate existence; instead, the liquidation plan "provide[d] for the monetization of the remaining assets of [plaintiff's] bankruptcy estate for the benefit of [plaintiff's] creditors." Thus, plaintiff's Chapter 11 proceedings did not prevent plaintiff from proceeding with the foreclosure claim.

¶ 70    Furthermore, as plaintiff notes, even if plaintiff had been dissolved at the time of the sale, the dissolution of a corporation

> "shall not take away nor impair any civil remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability accrued or incurred, either prior to, at the time of, or after such dissolution if action or other proceeding thereon is commenced within five years after the date of such dissolution." 805 ILCS 5/12.80 (West 2014).

Thus, even if plaintiff "went out of business on August 10, 2011," as defendant claims, plaintiff's foreclosure action was commenced within five years of that dissolution and so plaintiff would have been entitled to proceed with the action regardless of its status. Accordingly, we cannot find that the trial court abused its discretion in confirming the sale.

¶ 71                                       CONCLUSION

¶ 72    For the reasons set forth above, we affirm the trial court's judgment in its entirety. The trial court did not err in permitting plaintiff to amend the complaint, in denying defendant's motion

to strike the note, in granting summary judgment in plaintiff's favor, or in confirming the sale.

¶ 73        Affirmed.